715 S.E.2d 368

**The STATE, Respondent,**

v.

**Leon HILL, Appellant.**

No. 4856.

Court of Appeals of South Carolina.

Submitted June 1, 2011.

Decided July 27, 2011.

282

284

Appellate Defender M. Celia Robinson, South Carolina Commission on Indigent Defense, of Columbia, for Appellant.

Attorney General Alan Wilson, Chief Deputy John McIntosh, Assistant Attorney General Salley W. Elliott, Assistant Attorney General William M. Blitch, Jr., Office of the Attorney General, of Columbia, Daniel E. Johnson, Solicitor, Fifth Judicial Circuit Court, for Respondent.

HUFF, J.

Appellant, Leon Hill, was convicted of two counts of criminal sexual conduct (CSC) with a minor in the first degree and two counts of lewd act upon a child. Hill appeals, asserting the trial judge erred in (1) denying his motions concerning the jury pool on the grounds that the pool was not random and it failed to constitute a fair cross section of the community, (2) admitting into evidence a DVD of the child victim's forensic interview because the defense was deprived the opportunity to cross-examine the victim in regard to the making of the video or the victim's statements made during the interview, (3) allowing the State to question an expert witness regarding the content of the video so as to elicit the expert's opinion that the child had not been coached and was therefore presumably truthful, (4) denying defense counsel's motion for a mistrial based upon the State's failure to disclose information that constituted impeachment evidence of the State's lead investigator, and (5) charging the jury the victim's testimony need not be corroborated and allowing the State to inform the jury

of such where the statement of law was unduly emphasized in the State's opening and closing arguments. We affirm.[1]

## FACTUAL/PROCEDURAL BACKGROUND

Victim, who was eleven years old at the time of trial, testified to his subjection to acts of fellatio and anal intercourse with his uncle, Leon Hill. These acts occurred in Hill's basement room, as well as in a house that Hill and Victim were painting, during which time a man named "Tony" was present in the house. Victim's mother testified the matter was first brought to her attention by Tony Smith, and she then immediately questioned Victim. As a result, Victim's mother contacted the police, took Victim to the emergency room for an examination, talked to Investigator Livingston, and took Victim to the Assessment Resource Center for an interview. Investigator Roy Livingston, who was subsequently assigned this case, met with Victim and his mother for an interview, and then referred Victim to the Assessment Resource Center to be interviewed by professionals. Investigator Livingston also interviewed Tony Smith, but did not take a written statement from Smith. He stated he did not write down what Smith told him, other than what he put in some typed notes.

Dr. Joseph Campbell, the emergency room physician who saw Victim in the hospital, testified Victim indicated to him that he had been subjected to anal penetration with someone's "privates" and that Victim had been instructed to perform oral sex on someone's "privates," with the latest incident having occurred roughly five days prior to the examination. Dr. Campbell found a small abrasion during his rectal exam of Victim that could have been consistent with sexual trauma, but acknowledged it could have also been consistent with other non-sexual causes.

The State also presented the testimony of Ray Olszewski, who worked at the Assessment and Resource Center and was qualified as an expert in the field of forensic interviewing in child abuse assessments. Olszewski testified he interviewed Victim following referral from the Sheriff's department. Over

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

defense counsel's objection, the trial court admitted into evidence a DVD recording of Olszewski's forensic interview of Victim, which was played for the jury. Olszewski explained that one of the tools he used in trying to discern whether a child was coached in his accusations was to look for the level of detail provided by the child, noting that children who are coached often lack detail. He then described some of the specific types of details he looked for, and stated he looked for these details in Victim's interview. Over objection of defense counsel, Olszewski was allowed to testify that he saw those details in Victim's interview.

Tony Smith also testified for the State. Smith, who was a friend of Hill's, testified to incidents he observed while Hill and Victim were working with him, in particular two occasions where he found Hill behind locked doors with Victim, and Victim emerged on one of those occasions with his pants unzipped. Smith later spoke with someone in Victim's family about his concerns.

Dr. Susan Luberoff, who was qualified as an expert in child sexual assault examinations, testified that she examined Victim and found an anal area that was abnormal and appeared to be a healed injury from some type of force applied outside Victim's body, consistent with a penetrating injury. Dr. Luberoff distinguished the abnormality she observed from the abrasion noted in the emergency room physician's chart. She did not observe the abrasion in the area noted by the emergency room doctor, but explained that the abrasion was described as very small and she would have expected that to have healed rather quickly such that she would not expect to be able to see it when she performed her exam six days after the emergency room exam. She did note that an abrasion is the type of injury that may be seen in a sexual assault examination. The abnormality she observed on Victim was an old, healed injury that, in her opinion, was from a force applied from the outside of Victim's body.

Following submission of the matter to the jury, Hill was found guilty of two counts of lewd act upon a child and two counts of CSC with a minor in the first degree. The trial court sentenced Hill to thirty years on each of the CSC

 

charges and a consecutive sentence of ten years for the lewd act convictions, for a total of forty years. This appeal follows.

## ISSUES

1. Did the trial judge err in denying defense objections to the jury pool and *voir dire* process made on the grounds that the pool was not random and did not constitute a fair cross-section of the community?

2. Did the trial judge err in allowing in evidence, over defense objection, a DVD of a forensic interview with the child victim pursuant to S.C.Code Ann. section 17–23–175, where the defense was deprived of an opportunity to cross-examine the child victim about the making of the video or about the statements made during the interview in violation of the statute and in violation of appellant's right to confront the witnesses against him in violation of the confrontation and due process guarantees in the federal and state constitutions?

3. Did the trial judge err in allowing the prosecution to question the expert witness regarding the content of the interview so as to elicit his expert opinion that the child had not been coached and was therefore presumably truthful where such inquiry clearly invaded the jury's exclusive role of determining credibility, exceeded the time and place limitation on such testimony, and constituted impermissible bolstering?

4. Did the trial judge err in overruling the defense motion for a mistrial, made on the basis of the State's non-disclosure of information which would have been material to the defense in that it constituted powerful impeachment evidence of the State's lead investigator in violation of Rule 5, SCRCrimP and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)?

5. Did the trial judge err in charging the jury that the victim's testimony need not be corroborated and in allowing the prosecutor to inform the jury that the victim's testimony need not be corroborated where that statement of the law was unduly emphasized by the prosecution on opening and closing?

## LAW/ANALYSIS

### I. Jury Pool

■ When the case proceeded to trial, defense counsel raised an issue with the jurors available for selection in Hills'

trial. Counsel maintained, because other juries had already been selected prior to his opportunity to draw from the pool, those available did not represent a jury of his peers, but were an extreme group of society left after jurors for the other trials had been selected. In particular, counsel asserted that four of the remaining prospective jurors were chaplains, pastors or in seminary school, and that sixteen of the first twenty-four of the remaining jurors were female. He argued, because two other juries were drawn before his, the randomness afforded to Hill had been significantly reduced. He therefore made a motion for a new jury pool. After taking testimony from the jury coordinator regarding the general manner in which juries are drawn and the jury pools that are available, and in particular as to this case, the trial judge found the jury selection process in this case was fair and adequate and did not affect Hills' right to a fair trial. Accordingly, she denied Hill's motion for a new jury pool.

On appeal, Hill asserts that the right to trial by jury contemplates a jury drawn from a pool broadly representative of the community and impartial in a specific case. He contends the trial judge erred in overruling defense counsel's objections to the jury pool as not representing a broad cross section of the community where he was required to select his jury after the other juries had been selected, such that his jury pool did not represent a fair cross section of the community. We find no error.

"The sixth amendment right to a trial by jury has been made applicable to the states via the fourteenth amendment." *State v. Warren*, 273 S.C. 159, 162, 255 S.E.2d 668, 669 (1979). "The right to trial by jury contemplates a jury drawn from a pool broadly representative of the community and impartial in a specific case." *Id.*

Where a defendant moves to quash a jury venire or challenges the panel or array, the burden is on him to introduce or to offer strong and convincing evidence in support of his motion, and the failure to prove such contentions is fatal. *State v. Rogers*, 263 S.C. 373, 381, 210 S.E.2d 604, 608 (1974). Further, "[s]uch a challenge is without merit where it consists solely of an attorney's statements, unsworn and unsupported by any proof or offer of proof." *Id.*

In order to establish a prima facie violation of the fair cross-section requirement, the defendant must show that 1) the group excluded is a "distinctive" group in the community; 2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and 3) this underrepresentation is due to a systematic exclusion of the group in the jury selection process.

*State v. Patterson*, 324 S.C. 5, 21, 482 S.E.2d 760, 767–68 (1997).

Here, Hill failed to introduce any evidence to support his motion for a new jury pool. There is no evidence to support counsel's assertion that sixteen of the first twenty-four available jurors were female, or that four of the prospective jurors were pastors, chaplains or attending seminary school. Counsel's challenge on this basis was made solely on the basis of his unsworn statements to the trial judge, unsupported by any proof or offer of proof. Further counsel provided no evidence that these figures on the number of women and those employed or studying in the religious field would not be representative of a cross section of the community. Lastly, Hill failed to demonstrate a distinctive group that was underrepresented or that there was a systematic exclusion of a distinctive group. Accordingly, Hill failed to meet his burden to support his motion to be provided a new jury pool.

## II. Admission of Forensic Interview DVD

 In a pre-trial motion, the defense challenged the admission of the recording of Victim's forensic interview asserting (1) the statute sanctioning such admission was unconstitutional as it violated Hill's Sixth Amendment right to confrontation and (2) it did not meet the requirement of trustworthiness under the statute. Thereafter, the trial court held a hearing on the matter and concluded the recording met the requirements of the statute and therefore determined it was admissible.[2] The trial proceeded with the State first

---

2. Although Hill mentions in his brief that he challenged the constitutionality of the admission pursuant to the statute in question before the trial court, he does not argue the constitutionality of the statute itself on appeal or designate it is an argument in his statement of issues on

presenting the testimony of Victim. The State then presented the testimony of numerous other witnesses before presenting that of Olszewski, the forensic interviewer, through whom the State sought to introduce the DVD. Immediately prior to Olszewski taking the stand, defense counsel objected to the introduction of the recording on the basis that he would not be afforded an opportunity to effectively cross-examine Victim as required by the statute since the recording was not in evidence at the time the child was subject to cross-examination. Counsel maintained that, without the recording in evidence, once Victim left the stand the State's opportunity to introduce the recording into evidence was lost. The trial judge allowed the recording into evidence over Hill's objection.

On appeal, Hill contends the conditions required for admission of the DVD under South Carolina Code Ann. section 17–23–175(A) were not met, and his right to confrontation was ignored. Specifically he argues, as this particular case was presented by the State, the defense was "actually wholly deprived of any opportunity to cross-examine the child regarding his out of court statements as presented by DVD." He maintains, because the DVD was admitted into evidence after the child victim left the stand, the State's mode and order of presentation wholly denied him the right to cross-examine Victim as to the making of and content of the DVD statement, thereby violating the statute's requirements and his right to confrontation. We disagree.

Section 17–23–175(A) of the South Carolina Code permits the admission of out-of-court statements by a child under the age of twelve in criminal proceedings when the following conditions are met:

> (1) the statement was given in response to questioning conducted during an investigative interview of the child; (2) an audio and visual recording of the statement is preserved on film, videotape, or other electronic means ...;

appeal. Rather, he focuses on whether the statute's conditions were met and whether he was denied the right to confront witnesses against him by virtue of the fact that the recording was introduced into evidence through a later witness, after the child had been called to testify. Further, the trial judge did not specifically rule on counsel's argument that the statute itself was unconstitutional. Thus, such argument would not be preserved for appeal.

(3) the child testifies at the proceeding and is subject to cross-examination on the elements of the offense and the making of the out-of-court statement; and

(4) the court finds, in a hearing conducted outside the presence of the jury, that the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness.

S.C.Code Ann. § 17–23–175(A) (Supp.2010).[3]

■ The Sixth Amendment's Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. "The constitutional right to confront and cross examine witnesses is essential to a fair trial in that it promotes reliability in criminal trials and insures that convictions will not result from testimony of individuals who cannot be challenged at trial." *State v. Martin*, 292 S.C. 437, 439, 357 S.E.2d 21, 22 (1987).

■ In *Crawford v. Washington*, 541 U.S. 36, 54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the admission of testimonial hearsay statements against an accused violates the Confrontation Clause if: (1) the declarant is unavailable to testify at trial, and (2) the accused has had no prior opportunity to cross-examine the declarant. *State v. Stokes*, 381 S.C. 390, 400–01, 673 S.E.2d 434, 439 (2009). "Statements taken by police officers in the course of interrogations are considered testimonial." *Id.* at 401, 673 S.E.2d at 439.[4] However, the Confrontation Clause places no constraints at all on the use of the declarant's prior testimonial statements when the declarant appears for cross-examination at trial. *Id.* "The Confrontation Clause 'does not bar admission of a statement so long as the declarant is

---

3. Although Hill cites the entirety of section 17–23–175(A) and generally asserts "the statute's conditions were not met," the only argument Hill makes concerning violation of this statute is in regard to section 17–23–175(A)(3), which requires the child testify at the proceeding and be subject to cross-examination on the elements of the offense and the making of the out-of-court statement.

4. As noted, the record shows law enforcement referred Victim to the Assessment Resource Center to be interviewed by professionals.

present at trial to defend or explain it.' " *Id.* (quoting *Crawford* ).

"[A]s to cross-examination specifically, the Confrontation Clause 'guarantees only an **opportunity** for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " *Id.* at 401–02, 673 S.E.2d 434, 439, (quoting *United States v. Owens,* 484 U.S. 554, 559, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988) and noting emphasis in original). "Indeed, the opponent's opportunity for cross-examination has been deemed the 'main and essential purpose of confrontation.' " *Id.* at 402, 673 S.E.2d at 440 (quoting *Delaware v. Fensterer,* 474 U.S. 15, 19–20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985)). "Thus, it is the **opportunity** to cross-examine that is constitutionally protected." *Id.* (emphasis in original). Where trial counsel is given the opportunity to cross-examine a witness but chooses not to do so, there is no violation of the right to confrontation, for the Confrontation Clause guarantees the opportunity for effective cross-examination, but not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. *Id.* at 402–03, 673 S.E.2d at 440.

Here, Hill was clearly afforded the opportunity to cross-examine Victim while Victim was on the stand.[5] Hill does not argue he was prohibited by any rule of law from examining Victim about the elements of the offense or the making of the out-of-court statement during his cross-examination of Victim. He simply maintains that his cross-examination of Victim was not effective because the State failed to first place the DVD into evidence. However, as noted, the Confrontation Clause guarantees only the opportunity for effective cross-examination, not cross-examination that is effective in whatever way and to whatever extent the defense might wish. In addition, we note Hill does not assert he was in any way prohibited from recalling Victim to the stand to examine the child after

5. The defense presumably had access to the DVD and was aware of the statements made by Victim prior to Victim's testimony. The record shows Hill made pre-trial motions concerning the admissibility of Victim's recorded statement, inquired as to whether the trial judge had an opportunity to view the recording, and made no motion concerning a discovery violation based upon any failure of the State to provide the recorded statement to the defense.

introduction of the DVD through the forensic investigator. Accordingly, the requirements of section 17–23–175(A) were met, and Hill was not denied his right to confrontation.

### III. Testimony of Forensic Interview Expert

During direct examination of the State's expert witness Olszewski, who conducted the forensic interview of Victim, the solicitor elicited testimony regarding the signs the interviewer would look for in such an interview as to whether a child has been coached. When the solicitor attempted to ask a question particular to Victim, defense counsel objected, arguing testimony about whether Victim was coached would go to the expert's opinion of the truthfulness of the interview and was therefore inadmissible. The trial court directed the solicitor to proffer the testimony she sought to elicit, and the following proffer of Olszewski then occurred:

Q: We already been through what red flags you look for and how one of the things you look for is details in an interview. In the context of this forensic interview with [Victim], did you look for details regarding red flags as to being coached?

A: Yes.

Q: And what do you consider—what do you in your capacity as a forensic interviewer when you are looking for details, what do you mean by details?

A: We're talking about like idiosyncratic details maybe for example were any lubricants used? Is the child able to describe sensory information, maybe how something felt on their body for example. Are they able to give descriptions of locations things or, you know, things like that.

Q: And was that present in this interview?

A: Yes.

Defense counsel stated that "[i]t was the last question asked by [the solicitor] that we object to."

The trial judge found that the question of whether Olszewski saw the details was not the same as whether Victim was coached, and even so, the question did not elicit whether the witness thought Victim told the truth. The judge further noted that Hill's defense in regard to the forensic interview called into question whether Victim had been over-prepped,

and found the testimony was admissible. Olszewski was then allowed to testify consistently with his proffered testimony, specifically indicating he saw the details in Victim's interview.

Hill argues that the State was wrongly permitted to ask the expert about the red flags he looked for to indicate a child was coached in the offered testimony, and that one of the things he looked for in an un-coached, truthful child was detailed account. He contends, upon the expert answering the question so as to indicate that he did see the details in the interview with Victim, the jury was clearly informed the expert believed the child was uncoached and truthful. Under these circumstances, Hill asserts the trial judge erred in allowing the State to offer expert testimony that could be construed as indicating the expert's opinion was that the child witness was truthful and had not been coached. He argues the expert's testimony constituted a clear indication to the jury that the expert found Victim's statement credible, and this evidence should have been excluded as invading the jury's province and because its probative value was outweighed by the unfairly prejudicial effect pursuant to Rule 403, SCRE. We disagree.

The law is clear that it is improper for a witness to give testimony as to his or her opinion about the credibility of a child victim in a sexual abuse matter. *See State v. Dawkins,* 297 S.C. 386, 393–94, 377 S.E.2d 298, 302 (1989) (noting treating psychiatrist's indication he believed victim's allegations concerning symptoms were genuine was improper); *State v. Dempsey,* 340 S.C. 565, 568–71, 532 S.E.2d 306, 308–09 (Ct.App.2000) (finding, where child sexual abuse counselor's testimony included how he determined whether a child was telling the truth, his specific finding that child victim's answers and responses did not include any abnormality that would lead him to believe that child victim was not telling the truth, his testimony that children were being truthful in ninety-five percent of instances in which sexual abuse was alleged, and his conclusion that child victim in that case was being reliable, constituted improper vouching for the child victim).

In the case of *State v. Douglas,* 380 S.C. 499, 671 S.E.2d 606 (2009), our supreme court reversed this court's finding that the jury could infer from the forensic interviewer's testimony that she thought the victim told her the truth about being

sexually assaulted. *Id.* at 503–04, 671 S.E.2d at 609. There, the forensic interviewer gave testimony concerning how she conducted her interviews. Specifically, she testified that, in conducting forensic interviews and building a rapport with a child, they talk about things, she introduces herself to the child, tells the child what the interviewer's role is, goes over the rules of the interview, "[they] talk a lot about telling the truth and telling a lie and [they] make an agreement with each other" to tell each other the truth and, "if [they] get past that, if the child agrees to do that, [they] go on." *Id.* at 504, 671 S.E.2d at 609. The supreme court found the forensic interviewer never stated she believed the child victim, noting the interviewer did not even state the victim in that case agreed to tell her the truth, and the interviewer gave no indication concerning the victim's veracity. *Id.* at 503–04, 671 S.E.2d at 609. Under those circumstances the court held, "[t]here is no evidence whatsoever that [the forensic interviewer] believed the Victim to be telling the truth." *Id.* at 504, 671 S.E.2d at 609.

In the case at hand, as in *Douglas*, the forensic interviewer never addressed the veracity of Victim.[6] He testified only that he saw the types of details in Victim's interview that he would look for to determine whether a child had been coached. He gave no opinion on whether Victim was being truthful, or even that Victim had not, in fact, been coached. Accordingly, we find no reversible error in the admission of this testimony.[7]

---

6. Though Hill argues on appeal that the trial judge improperly allowed the State to question the expert about the red flags he looked for to indicate a child was coached, and that one of the things he looked for in an un-coached child was detailed account, the record shows defense counsel limited his objection at trial to the question of whether the forensic interviewer observed the details in his interview with Victim, and specifically agreed the State could "talk about red flags looked for" by the forensic interviewer.

7. Although Hill presents in his statement of issues on appeal that the inquiry of the forensic interviewer invaded the jury's exclusive role of determining credibility, exceeded the time and place limitation on such testimony, and constituted impermissible bolstering, the only argument Hill makes in the argument portion of his brief is in regard to whether the objected to evidence impermissibly allowed the forensic interviewer to indicate his opinion on Victim's veracity. At any rate, the forensic interviewer did not testify as to Victim's complaint of a sexual assault, much less testify to any sexual assault in corroboration of Victim's

## IV. Mistrial Motion for Failure to Disclose Impeachment Evidence

The next issue Hill raises on appeal is whether the trial judge erred in "overruling the defense motion for a mistrial, made on the basis of the State's non-disclosure of information which would have been material to the defense in that it constituted powerful impeachment evidence of the State's lead investigator in violation of Rule 5, SCRCrimP and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)." In arguing this matter, appellate counsel little more than quotes from the numerous pages of the transcript regarding various arguments raised before the trial judge surrounding the matter, including arguments that are not appropriately before this court.[8] Hills' brief never incorporates those arguments as appellate argument, but merely recites the lengthy arguments made by both trail counsel and the solicitor, and fails to even maintain that trial counsel "correctly argued" these matters or otherwise adopt trial counsel's arguments. Neither does Hill narrow down the issue for this court to review. Hill's appellate counsel recounts the arguments made and the ruling of the trial judge and then follows that recitation with the following paragraph, which is the only appellate argument on this issue in Hill's brief:

This ruling was error where the defense was not alerted to impeachment evidence against the State's lead investigator

---

testimony beyond time and place of any such assault. *See Jolly v. State*, 314 S.C. 17, 20, 443 S.E.2d 566, 568 (1994). (holding, when a victim testifies in a criminal sexual conduct case, evidence from other witnesses that the victim complained of the sexual assault is admissible in corroboration; however, such evidence is limited to the time and place of the assault and cannot include details or particulars).

8. For instance, appellate counsel recites trial counsel's argument concerning the alleged Rule 5 violation by the State, but the only argument made concerning Rule 5 related to the State's alleged failure to turn over handwritten notes of Investigator Livingston. After Livingston took the stand and indicated he did not handwrite any notes from the interview, but only took down Smith's personal information, and it was clarified that the State turned over Livingston's summary of the interview to the defense, defense counsel made no further argument regarding Rule 5. Further, defense counsel never based its impeachment argument on a Rule 5 violation when it sought to "clarify" its argument on the matter the following day after the State had rested, but only raised it as a *Brady* violation.

which was known to the prosecutor, in violation of *Brady*. Under these circumstances, a mistrial was required.

Based upon the simple recitation of the extensive arguments raised at the trial level, including several disruptions of side issues requiring *in camera* testimony, as well as the lack of clarity on the ultimate issue at the appellate level and the fact that appellate counsel merely recites the extensive testimony and arguments of counsel without even adopting trial counsel's arguments, along with appellate counsel's two sentence conclusory argument with citation to only *Brady* and no analysis whatsoever as to why or how *Brady* applies, we find this issue is abandoned. The mere fact that Hill cited to *Brady* does not provide this court with any guidance as to why the State should be deemed to have withheld material impeachment evidence entitling Hill to a mistrial. *See State v. Jones*, 344 S.C. 48, 58–59, 543 S.E.2d 541, 546 (2001) (noting, where the only passage in a brief relating to an issue appealed is a single conclusory statement which leaves unargued the error assigned by exception, the issue will be deemed abandoned on appeal; an issue will be deemed abandoned on appeal if it is argued in a short, conclusory statement without supporting authority); Rule 208(b)(1)(D), SCACR (requiring the content of the argument portion of the brief include the particular issue to be addressed set forth in distinctive type, *"followed by discussion and citations of authority"*) (emphasis added). *See also State v. Porter*, 389 S.C. 27, 35–36, 698 S.E.2d 237, 241 (Ct.App.2010) (holding, where the only citations in the argument section of appellant's brief were to a North Carolina statute and two cases, but those authorities did not support the specific argument raised, the argument was deemed abandoned).

## V. Corroboration Charge

■ On appeal, Hill contends the trial judge erred in charging the jury that Victim's testimony need not be corroborated and in allowing the prosecution to inform the jury of the same, where that statement of law was unduly emphasized by the prosecution. He maintains the trial judge erred in allowing the prosecution to unduly emphasize the no-corroboration charge in opening and closing arguments, and where the statement of law had been unduly emphasized by the prosecu-

tion, the trial judge further erred in nevertheless choosing to similarly instruct the jury. We find no error.

Section 16–3–657 of the South Carolina Code provides, "The testimony of the victim need not be corroborated in prosecutions under §§ 16–3–652 through 16–3–658." S.C.Code Ann. § 16–3–657 (2003). These criminal statutes generally encompass the prohibition of various forms and degrees of criminal sexual conduct, and include criminal sexual misconduct with a minor for which Hill was charged. S.C.Code Ann. § 16–3–655(A) (Supp.2010).

In *State v. Rayfield,* 369 S.C. 106, 631 S.E.2d 244 (2006), the appellant asserted that the trial judge erred in charging section 16–3–657 to the jury because the charge constituted an impermissible comment on the facts of the case, it improperly emphasized the testimony of one witness, and it carried a strong possibility of unfairly biasing the jury against the defendant. *Id.* at 115, 631 S.E.2d at 249. Our supreme court noted the trial court had charged the jury that the State had the burden of proving the defendant was guilty of the charged offenses beyond a reasonable doubt, and further instructed the jurors that they were the sole and exclusive judges of the facts of the case, that the trial court was prohibited from commenting on or having an opinion about the facts of a case, and that it was the responsibility of the jury to assess the credibility of the witnesses who testified in the case. *Id.* at 116, 631 S.E.2d at 249–50. The supreme court then stated as follows:

It is not always necessary, of course, to charge the contents of a current statute. Section 16–3–657 prevents trial or appellate courts from finding a lack of sufficient evidence to support a conviction simply because the alleged victim's testimony is not corroborated. However, § 16–3–657 does much more. In enacting this statute, the Legislature recognized that crimes involving criminal sexual conduct fall within a unique category of offenses against the person. In many cases, the only witnesses to a rape or sexual assault are the perpetrator and the victim. An investigation may or may not reveal physical or forensic evidence identifying a particular perpetrator. The Legislature has decided it is reasonable and appropriate in criminal sexual conduct cases to make abundantly clear—*not only to the judge but also to*

*the jury*—that a defendant may be convicted solely on the basis of a victim's testimony.

*Id.* at 117, 631 S.E.2d at 250 (emphasis added). The court then concluded, while a trial judge is not required to charge section 16–3–657, when the judge chooses to do so, giving the charge does not constitute reversible error when "this single instruction is not unduly emphasized and the charge as a whole comports with the law." *Id.* at 117–18, 631 S.E.2d at 250. The court determined, because the jury in that case was thoroughly instructed on the State's burden of proof and the jury's duty to find the facts and judge the credibility of witnesses, the trial judge fully and properly instructed the jury on those principles. *Id.* at 118, 631 S.E.2d at 250.

Here, the sole instruction the trial judge charged the jury on corroboration was as follows: "The testimony of a victim in a criminal sexual conduct prosecution need not be corroborated by other testimony or evidence." Notably, the judge immediately followed that statement with, "Necessarily you must determine the credibility of witnesses who have testified in this case." The judge also included in her charge several instructions regarding the State having the burden to prove Hill guilty beyond a reasonable doubt, and further charged the jury that it was the exclusive judge of the facts and was not to infer that the trial judge had any opinion about the facts. Thus, this jury was thoroughly instructed on the State's burden of proof and the jury's duty to find facts and judge credibility of witnesses, as well as admonished not to infer that the trial judge had any opinion about the facts. Accordingly, the single instruction on "no corroboration," was not unduly emphasized, and the charge as a whole comported with the law, such that there was no reversible error in the "no corroboration" charge.

Further, we find no merit to Hill's assertion on appeal that the trial judge erred in allowing the prosecution to unduly emphasize this law in its opening and closing. First, it is questionable whether this argument is properly preserved for review inasmuch as, although defense counsel made a pretrial objection to the State being allowed to address it in its opening and closing, counsel failed to make any contemporaneous objection to the State's references to the "no corroboration" law in its opening and closing arguments, and failed to

argue to the trial judge that the State's references during opening and closing "unduly emphasized" the statement of law. *State v. Johnson*, 363 S.C. 53, 58, 609 S.E.2d 520, 523 (2005) (noting, in order to properly preserve an issue for appellate review, there must be a contemporaneous objection that is ruled upon by the trial court); *State v. McKnight*, 352 S.C. 635, 646–47, 576 S.E.2d 168, 174 (2003) (noting contention must be raised to and ruled upon by trial court to be preserved for review). At any rate, after a review of the State's opening and closing statements, we do not find the State's arguments unduly emphasized this law. Additionally, not only did the trial judge take precautions to ensure the jury was thoroughly instructed on the State's burden of proof and the jury's duty to find the facts and judge the credibility of witnesses, the State also informed the jury of these matters in its opening and closing arguments. Accordingly, we find no error.

## CONCLUSION

For the foregoing reasons, Hill's convictions are
**AFFIRMED.**

WILLIAMS and THOMAS, JJ., concur.