757 S.E.2d 721

The STATE, Respondent,

v.

Cesar PORTILLO, Appellant.

Appellate Case No. 2011–196447.

No. 5216.

Court of Appeals of South Carolina.

Heard Feb. 3, 2014.

Decided April 9, 2014.

Rehearing Denied May 22, 2014.

Appellate Defender Kathrine Haggard Hudgins, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Assistant Attorney General Mark Reynolds Farthing, and Assistant Attorney General Julie Kate Keeney, all of Columbia, for Respondent.

SHORT, J.

Cesar Portillo appeals his conviction and twenty-five year sentence for first-degree criminal sexual conduct with a minor (CSC), arguing the trial court erred in: (1) qualifying a witness as an expert in child sexual assault cases and child sexual assault forensic interviewing; (2) allowing the expert to exceed his scope of expertise and testify about the significance of language and hand gestures used by the victim (Victim); and (3) allowing the expert to testify Victim exhibited symptoms of post-traumatic stress disorder (PTSD) where no diagnosis of PTSD was made. We affirm.

## FACTS

In 2010, Portillo was indicted for one count of CSC with a minor. Victim testified she spent the night with her cousin (Cousin) on the night in question. Victim testified to the abuse, stating she awoke when she felt a slight touch on her hand. Portillo, her uncle, moved her hand to his private parts and moved her hand back and forth. Portillo pulled down her pajama pants and placed his hands on her private parts. He then licked her privates. Victim witnessed Portillo touching his own private parts and "something was coming out of him, going into Cousin's polka-dotted trash can." Portillo wiped himself with a towel and left the room. He returned to retrieve a towel from Cousin's closet and entered the bathroom. When Victim heard the shower turned on, she ran into Portillo's bedroom and told her aunt (Aunt), about the assault. Victim was nine years old at the time of the sexual assault.

During the trial, Aunt testified she was married to Portillo, and Victim was her niece. Victim was spending the night in question with the Portillos' daughter, Cousin. Portillo fell asleep in his work clothes in Portillo and Aunt's bedroom. Aunt testified she eventually fell asleep and was awakened by Victim at approximately 1:30 a.m. Aunt described Victim as confused and startled. Victim told Aunt about the assault. At the time, Portillo was in the shower. When Aunt confronted Portillo, his demeanor was upset, "very shaky[, ...] kind of, like, trembling." Aunt took Victim and Cousin to Victim's grandmother's house.

Victim's mother (Mother), a registered nurse, testified she met Aunt and Victim at the grandmother's house, and Mother later called Dr. Linda DeMarco, MD. The following day, Dr. DeMarco examined Victim. At trial, the court qualified Dr. DeMarco as an expert in the fields of pediatrics and pediatrics in sexual assault cases. Dr. DeMarco found redness and irritation between the labial lips consistent with Victim's allegations of sexual assault.

Approximately one week after the incident, Victim met with Dr. Donald Elsey for a forensic interview. A videotape of the interview was viewed by the jury. When Dr. Elsey was asked at trial what certain language used by Victim signified, he responded, "she was just telling what she was seeing.... She

just described something that she said she saw." Dr. Elsey opined Victim's language was age-appropriate. According to Dr. Elsey, Victim "did not appear to . . . [have] words for what she was describing, other than just to describe what she was seeing." He further opined, "It appeared to me she, again, was just describing what she said she was seeing. She wasn't using language that it seemed somebody else had given to her. It was just what she said she experienced." When asked about the significance of hand gestures Victim used, Dr. Elsey responded, "I think she was just trying to help me understand what she was trying to tell me, because I don't think she fully understood . . . understood what she was describing."

At a second interview, conducted a week after the first interview, Victim's family expressed concern to Dr. Elsey regarding symptoms Victim was experiencing, such as the inability to sleep, nightmares, and the ability to focus on school work. Dr. Elsey testified Victim said there was a connection between the alleged molestation and the symptoms. He opined the symptoms could be indicative of post-traumatic stress disorder (PTSD), but due to the short period of time between the incident and his interviews with Victim, it would be inappropriate for him to diagnose her with PTSD. However, Dr. Elsey admitted the symptoms could be indicative of a traumatic experience. He testified he referred Victim to a therapist for "trauma-focused cognitive behavioral therapy." Dr. Elsey concluded his testimony by testifying a forensic interview is "a piece of the investigation," and he could not state what happened to Victim and had made no determination in regard to the information reported to him.

The trial court instructed the jury to give "no greater weight" to an expert witness's testimony "simply because the witness is an expert." The jury convicted Portillo. This appeal followed.

## STANDARD OF REVIEW

In criminal cases, this court sits to review errors of law only and is bound by the trial court's factual findings unless they are clearly erroneous. *State v. Wilson*, 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001). Thus, on review, the appellate court is limited to determining whether the trial court abused its discretion. *Id.* at 6, 545 S.E.2d at 829. "An abuse of discre-

tion occurs when a trial court's decision is unsupported by the evidence or controlled by an error of law." *State v. Hughes,* 346 S.C. 339, 342, 552 S.E.2d 35, 36 (Ct.App.2001). "The qualification of a witness as an expert and the admissibility of his or her testimony are matters left to the sound discretion of the trial [court], whose decision will not be reversed on appeal absent an abuse of that discretion and prejudice to the opposing party." *State v. Jamison,* 372 S.C. 649, 652, 643 S.E.2d 700, 701 (Ct.App.2007).

## LAW/ANALYSIS

### A. Dr. Elsey's Testimony[1]

Portillo argues the trial court erred in qualifying Dr. Elsey as an expert in child sexual assault cases and child sexual assault forensic interviewing, and the qualification was prejudicial because the testimony amounted to vouching for victim's credibility. Portillo also argues Dr. Elsey's testimony regarding the significance of victim's language and hand gestures exceeded the scope of his expertise and vouched for victim's credibility.[2] We find no reversible error.

In *State v. Kromah,* 401 S.C. 340, 357 n. 5, 737 S.E.2d 490, 499 n. 5 (2013), our supreme court found the following:

[W]e can envision no circumstance where [a forensic interviewer's] qualification as an expert would be appropriate. Forensic interviewers might be useful as a tool to aid law enforcement officers in their initial investigative process, but this does not make their work appropriate for use in the courtroom. The rules of evidence do not allow witnesses to vouch for or offer opinions on the credibility of others, and the work of a forensic interviewer, by its very nature, seeks to ascertain whether abuse occurred at all, i.e., whether the victim is telling the truth, and to identify the source of the

---

1. We combine Portillo's first and second arguments.

2. Portillo also argues the trial court erred in failing to make the findings required by Rule 702, SCRE. However, Portillo raises this issue for the first time on appeal; thus, it is not preserved for appellate review. *See State v. Dunbar,* 356 S.C. 138, 142, 587 S.E.2d 691, 693–94 (2003) ("In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial [court]. Issues not raised and ruled upon in the trial court will not be considered on appeal.").

abuse. Part of the [forensic interviewer's methodology] . . . involves evaluating whether the victim understands the importance of telling the truth and whether the victim has told the truth, as well as the forensic interviewer's judgment in determining what actually transpired. For example, an interviewer's statement that there is a "compelling finding" of physical abuse relies not just on objective evidence such as the presence of injuries, but on the statements of the victim and the interviewer's subjective belief as to the victim's believability. However, an interviewer's expectations or bias, the suggestiveness of the interviewer's questions, and the interviewer's examination of possible alternative explanations for any concerns, are all factors that can influence the interviewer's conclusions in this regard. Such subjects, while undoubtedly important in the investigative process, are not appropriate in a court of law when they run afoul of evidentiary rules and a defendant's constitutional rights.

The court in *Kromah* also stated, "[A]lthough an expert's testimony theoretically is to be given no more weight by a jury than any other witness, it is an inescapable fact that jurors can have a tendency to attach more significance to the testimony of experts." *Id.* at 357, 737 S.E.2d at 499. The court continued,

[E]ven though experts are permitted to give an opinion, they may not offer an opinion regarding the credibility of others. It is undeniable that the primary purpose for calling a "forensic interviewer" as a witness is to lend credibility to the victim's allegations. When this witness is qualified as an expert the impermissible harm is compounded.

*Id.* at 358, 737 S.E.2d at 499.

■ The supreme court found the types of statements a forensic interviewer should avoid include the following:

- that the child was told to be truthful;
- a direct opinion as to a child's veracity or tendency to tell the truth;
- any statement that indirectly vouches for the child's believability, such as stating the interviewer has made a "compelling finding" of abuse;

- any statement to indicate to a jury that the interviewer believes the child's allegations in the current matter; or
- an opinion that the child's behavior indicated the child was telling the truth.

*Id.* at 360, 737 S.E.2d at 500. The court continued:

A forensic interviewer, however, may properly testify regarding the following:
- the time, date, and circumstances of the interview;
- any personal observations regarding the child's behavior or demeanor; or
- a statement as to events that occurred within the personal knowledge of the interviewer.

These lists are not intended to be exclusive, since the testimony will of necessity vary in each trial, but this may serve as a general guideline for the use of this and other similar testimony by forensic interviewers.

*Id.* at 360, 737 S.E.2d at 500–01. Clearly, under *Kromah,* the trial court erred in qualifying Dr. Elsey as an expert in the field of forensic interviewing. However, we find the question of whether the testimony constituted vouching is not as clear.

In this case, Dr. Elsey's testimony may violate two of the types of questions now prohibited by *Kromah.* For instance, Dr. Elsey's testimony that victim was not coached is arguably a prohibited "statement that indirectly vouches for the child's believability." *See id.* at 360, 737 S.E.2d at 500 (prohibiting such testimony by a forensic interviewer). Furthermore, Dr. Elsey's testimony regarding hand gestures and PTSD symptoms may violate the prohibition on opining "that the child's behavior indicated the child was telling the truth." *See id.* (prohibiting a forensic interviewer from stated opinion testimony). However, Dr. Elsey's testimony, as found by the trial court, was overall not as egregious as the type of opinion testimony generally found to be inappropriate vouching. For instance, in *Kromah,* the forensic interviewer testified she made a compelling finding for child abuse and related that finding to law enforcement agencies. *Id.* at 351, 737 S.E.2d at 496. The supreme court found the forensic interviewer's "testimony about a 'compelling finding' to be inappropriate." *Id.* at 359, 737 S.E.2d at 500; *see State v. Jennings,* 394 S.C. 473, 479–80, 716 S.E.2d 91, 94 (2011) (finding improper vouch-

ing where the forensic interviewer's report concluded the three minor victims had provided compelling disclosures of abuse during their interviews); *Smith v. State*, 386 S.C. 562, 569, 689 S.E.2d 629, 633 (2010) (concluding the forensic interviewer improperly bolstered the child victim's credibility when testifying the victim reported the assault to the interviewer, and the interviewer found the victim's statement believable).

In comparison, the supreme court in *State v. Douglas*, 380 S.C. 499, 503–04, 671 S.E.2d 606, 609 (2009), reversed this court's finding that the jury could infer from the forensic interviewer's testimony that she thought the victim told her the truth about being sexually assaulted. In *Douglas*, the forensic interviewer testified concerning how she conducted her interviews by building a rapport with a child, reviewing the interview process, and discussing the difference between telling the truth and telling a lie. *Id.* The supreme court found the forensic interviewer never stated she believed the child victim, noting the interviewer did not even state the victim in that case agreed to tell her the truth, and the interviewer gave no indication concerning the victim's veracity and did not in any way opine that the interviewer believed the victim was telling the truth. *Id.; see State v. Hill*, 394 S.C. 280, 294–95, 715 S.E.2d 368, 376–77 (Ct.App.2011) (finding no error in the forensic interviewer's testimony regarding the specific details he looked for to indicate whether or not a child victim had been coached).

Portillo acknowledges Dr. Elsey did "not specifically testify[ ] that he believed the child witness" and argues instead that by stating Victim used childlike language and gestures and exhibited symptoms of trauma, Dr. Elsey vouched for Victim's credibility. As was the case in *Douglas*, Dr. Elsey did not specifically state he believed Victim to be truthful. *See Douglas*, 380 S.C. at 503–04, 671 S.E.2d at 609 (finding the expert witness did not vouch for the victim's veracity where she described the methods used during her interview). In fact, he stated he could not testify as to what happened to Victim, and he made no determination in regard to the information reported to him. However, he testified Victim was not being coached, and the symptoms she described were consistent with PTSD. After consideration of the prohibition of qualifying forensic interviewers as expert witnesses in *Kro-*

*mah,* we have already found the trial court erred in qualifying Dr. Elsey as an expert in forensic interviewing. After reviewing Dr. Elsey's testimony, we likewise find error in the admission of the statements that inappropriately vouched for Victim.

Nevertheless, like other trial errors, these errors are subject to a harmless error analysis. *See Kromah,* 401 S.C. at 361–62, 737 S.E.2d at 501 (subjecting the erroneous qualification of a forensic interviewer to a harmless error analysis); *see also State v. Jennings,* 394 S.C. 473, 480, 716 S.E.2d 91, 94–95 (2011) (subjecting improper vouching to a harmless error analysis). In conducting a harmless error analysis, the reviewing court looks to the basis on which the jury actually rested its verdict. *Lowry v. State,* 376 S.C. 499, 508, 657 S.E.2d 760, 765 (2008). "[T]o conclude that the error did not contribute to the verdict, the Court must 'find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.'" *Id.* (quoting *Yates v. Evatt,* 500 U.S. 391, 403, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991)).

In this case, the evidence admitted included the videotape of Victim's interview, and the trial testimony of Victim, Aunt, Mother, Dr. DeMarco, and Dr. Elsey. In reviewing the record for harmless error, we first note there is physical evidence of sexual assault, despite Portillo's argument the physical evidence is slight compared to that in *Douglas.* A nurse in *Douglas* examined the victim and found vaginal tearing and scarring consistent with past penetration. *Douglas,* 380 S.C. at 504, 671 S.E.2d at 609. Here, Dr. DeMarco examined Victim and found redness and irritation between the labial lips consistent with Victim's allegations of sexual assault. Although the physical evidence in *Douglas* was arguably more conclusive than that in the present case, there is some physical evidence of sexual assault in this case. In addition to the medical evidence in the case, Aunt provided corroborating testimony regarding the time and place of the sexual abuse. *See State v. Schumpert,* 312 S.C. 502, 506–07, 435 S.E.2d 859, 862 (1993) ("It is a well-settled exception to the hearsay rule that in criminal sexual conduct cases when the victim testifies, evidence from other witnesses that she complained of the assault is admissible in corroboration limited to the time and

place of the assault and excluding details or particulars."). Finally, the trial court's instructions to the jury required it to give "no greater weight" to an expert witness's testimony "simply because the witness is an expert."

After a review of the record in this case, we find any errors arising from Dr. Elsey's qualification as an expert in forensic interviewing and his alleged vouching to be harmless beyond a reasonable doubt. *See Kromah*, 401 S.C. at 362, 737 S.E.2d at 501 (finding any error in the admission of the forensic interviewer was harmless beyond a reasonable doubt after a review of the entire record); *State v. Mizzell*, 349 S.C. 326, 333–34, 563 S.E.2d 315, 319 (2002) (finding error is harmless beyond a reasonable doubt if the "reviewing court can conclude the error did not contribute to the verdict beyond a reasonable doubt"); *State v. Pradubsri*, 403 S.C. 270, 281, 743 S.E.2d 98, 104 (Ct.App.2013) (explaining the requirement that a reviewing court must review the entire record to determine the effect of an error on the verdict in determining whether an error is harmless).

## B. TESTIMONY ON PTSD SYMPTOMS

Portillo argues the trial court erred in permitting Dr. Elsey to testify regarding Victim's PTSD symptoms. Portillo maintains Dr. Elsey was not qualified to testify that Victim exhibited symptoms consistent with PTSD, and further argues the trial court "failed to make the requisite finding pursuant to Rule 702, SCRE." We find Portillo abandoned these arguments. *See State v. Lindsey*, 394 S.C. 354, 363, 714 S.E.2d 554, 558 (Ct.App.2011) ("An issue is deemed abandoned and will not be considered on appeal if the argument is raised in a brief but not supported by authority."). Furthermore, we find any error to be harmless beyond a reasonable doubt. *See Douglas*, 380 S.C. at 504, 671 S.E.2d at 609 (finding forensic interviewer's testimony that the victim needed a medical examination to be harmless error); *State v. Pagan*, 369 S.C. 201, 212, 631 S.E.2d 262, 267 (2006) ("Error is harmless beyond a reasonable doubt where it did not contribute to the verdict obtained.").

## CONCLUSION

For the foregoing reasons, Portillo's conviction is **AFFIRMED.**

FEW, C.J., and GEATHERS, J., concur.