**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Bryant Christopher Gurley, Appellant.

Appellate Case No. 2015-000235

———————

Appeal From Florence County
William H. Seals, Jr., Circuit Court Judge

———————

Unpublished Opinion No. 2017-UP-342
Heard May 3, 2017 – Filed August 9, 2017

———————

**REVERSED**

———————

Katherine Carruth Goode, of Winnsboro, and Jack B. Swerling, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General Jennifer Ellis Roberts, both of Columbia; and Solicitor Edgar Lewis Clements, III, of Florence, for Respondent.

———————

**PER CURIAM:** Bryant Gurley appeals his conviction and sentence for committing a lewd act on a minor child.[1] Gurley argues the trial court erred by (1) admitting the video recording of Victim's forensic interview; (2) qualifying Victim's counselor as an expert and admitting her testimony; (3) admitting improper rebuttal and character evidence; and (4) allowing testimony by Victim's Mother that exceeded the time and place hearsay exception. Gurley also seeks a new trial based on the cumulative prejudice of these alleged errors. We reverse.

## I.

Around 2008, Victim's Mother separated from her husband. She and her two daughters, one of whom is Victim, moved in with her friend Denise Gurley, who is married to Gurley's father and is Gurley's stepmother. Gurley lived with his mother but visited his father on holidays and weekends about once a month. Victim alleged that between 2010 and 2011, Gurley sexually assaulted her by putting his hands on her private parts. At the time of the alleged assaults, Victim was in first and second grade and Gurley was between fourteen and fifteen years old.

Victim testified Gurley assaulted her four times: "upstairs, . . . on the couch, . . . under the covers, [and] in the back of the car." On cross-examination, Victim stated there were only three incidents of abuse; she denied a fourth incident took place in a bedroom and denied telling anyone there was a fourth incident. Instead, Victim testified an incident occurred in the living room while Mother was getting her eyebrows arched in the adjacent kitchen. The "car" incident allegedly occurred when Mother took Victim, Sister, and Gurley to visit Victim's Grandmother in Lake City. Victim and Gurley rode in the back, while Sister sat up front. According to Victim, Mother went into Grandmother's home for ten to fifteen minutes, while everyone else stayed in the car. Victim said she never spoke to Grandmother. Victim testified that while Mother was in Grandmother's home, Gurley touched her private parts.

As to the "upstairs" incident, Victim testified this incident took place in the music room of the Gurley home during a family get-together. Victim testified Gurley stopped touching her because a friend came looking for her, but Victim could not identify the friend. Victim testified she disclosed these incidents to Mother one morning before school.

---

[1] Now classified as criminal sexual conduct with a minor in the third degree. S.C. Code Ann. § 16-3-655(C) (2015).

Mother confirmed Victim's disclosure and testified she once saw Victim and Gurley go into a bedroom while she was having her eyebrows arched in the kitchen by Gurley's father. As to the car incident, Mother, Grandmother, and Sister testified everyone got out of the car and went into Grandmother's home. Grandmother added that everyone stayed at her house about an hour. Grandmother and Sister both testified that when everyone was getting ready to leave, Victim became upset because she did not want to ride in the back seat, although she did not say why. Sister also testified she did not see anything happen in the back seat and could not recall any other time when Victim cried while around Gurley.

The State also called Kathy Crawford, a licensed professional counselor. Crawford began counseling Victim in May of 2013 and was still counseling her at the time of trial. Over Gurley's objection, the trial court qualified Crawford as an expert in child sexual trauma.

Crawford testified about child-sexual-abuse indicators and disclosure by sexual assault victims. She stated Victim told her about three incidents of abuse. During Crawford's testimony, the State asked her about "coaching":

> [State]: Ms. Crawford, have you ever worked with a child that's been coached?
>
> [Crawford]: The times that I believe that I have worked with children that have been coached is usually when they are coached by the offender not to tell.
>
> . . .
>
> [State]: Okay. Did you see any evidence of coaching with [Victim]?
>
> [Gurley]: Objection, Your Honor. She can't render an opinion as to that.
>
> [The Court]: Overruled.
>
> . . .
>
> [Crawford]: All I can say is when I met with [Victim] and when she drew these pictures, we went back over and only

[Victim] and I were in the room. The mother was not in the room at all. And [Victim] was very detailed about the location of where it happened, and she was so detailed she even told me what pictures were on the walls, what clothes she wore the time that she was in the car.

[State]:   All right.

[Crawford]: And she was consistent.

The State then proffered the testimony of Sally Williamson, the forensic interviewer who interviewed Victim, and played the video of Victim's forensic interview. Gurley objected to admission of the video because at the end of the interview, Williamson said, "[Gurley] broke the rules."[2] The State argued Williamson was "acting" and made the statement for Victim's benefit to make her feel safe. The trial court agreed and the video was played for the jury.

Gurley called numerous witnesses. Regarding the "upstairs" incident, which Victim stated took place in the music room, several of Gurley's family members and one of his pastors testified the Gurleys hosted an annual Fourth of July cookout at their home that was attended by fifty to seventy people. Gurley's father testified children were not allowed in the music room because it contained expensive equipment. There was also testimony that during the cookout, Gurley helped cook and hung out with the adults talking about sports as he was usually the oldest child in attendance.

As to the living room incident, Gurley's father, a master barber, testified he had arched Mother's eyebrows on several occasions, but never saw Victim and Gurley go into a bedroom alone.

---

[2] Williamson's remarks in full were:

Well, I am proud of you, [Victim]. I want you to know you are not in any kind of trouble at all, and you haven't done anything wrong at all. Okay? None of this is your fault. B.G. broke the rules. Nobody ever gets to touch your private parts or make you touch theirs. I'm really, really proud of you. It takes a very brave girl to tell about what happened.

The jury found Gurley guilty of lewd act on a minor child. The trial court sentenced him to eight years in prison.

## II.

Gurley argues the trial court erred by admitting the video of Victim's forensic interview because Williamson's statement "[Gurley] broke the rules" constituted improper bolstering. We agree.

We review trial court rulings on the admissibility of evidence for abuse of discretion. *State v. Halcomb*, 382 S.C. 432, 443, 676 S.E.2d 149, 154 (Ct. App. 2009). It is well settled "that it is improper for a witness to give testimony as to his or her opinion about the credibility of a child victim in a sexual abuse matter." *State v. Hill*, 394 S.C. 280, 294, 715 S.E.2d 368, 376 (Ct. App. 2011). Because assessing witness credibility is "the exclusive province of the jury," one witness may not improperly bolster the testimony of another. *State v. McKerley*, 397 S.C. 461, 464, 725 S.E.2d 139, 141 (Ct. App. 2012). If "there is no way to interpret [the witness]'s testimony other than as her opinion that the victim was telling the truth," the testimony is inadmissible. *Id.* at 465, 725 S.E.2d at 142.

*State v. Kromah* recognized the "undeniable . . . primary purpose for calling a 'forensic interviewer' as a witness is to lend credibility to the victim's allegations." 401 S.C. 340, 358, 737 S.E.2d 490, 499 (2013). In light of this reality, the court directed forensic interviewers to avoid five kinds of statements:

> that the child was told to be truthful; a direct opinion as to a child's veracity or tendency to tell the truth; any statement that indirectly vouches for the child's believability, such as stating the interviewer has made a "compelling finding" of abuse; any statement to indicate to a jury that the interviewer believes the child's allegations in the current matter; or an opinion that the child's behavior indicated the child was telling the truth.

*Id.* at 360, 737 S.E.2d at 500. *Kromah* approved the following subjects: "the time, date, and circumstances of the interview; any personal observations regarding the child's behavior or demeanor; or a statement as to events that occurred within the personal knowledge of the interviewer." *Id.*

Williamson's statement that "[Gurley] broke the rules" does not fall within the subjects approved by *Kromah*. Nor are we persuaded by the State's argument Williamson was merely acting to put Victim at ease. Williamson made the challenged statement at the conclusion of the interview, after Victim had told her about the alleged assaults. Furthermore, Williamson's subjective intent in making the statement is immaterial. The relevant inquiry is whether there is a way to interpret the statement other than as an expression of the witness' belief Victim told the truth. *See McKerley*, 397 S.C. at 465, 725 S.E.2d at 142 (finding that even though the forensic interviewer "never testified directly that she believed what the victim stated in her interviews or in her testimony . . . . there [wa]s no way to interpret [the interviewer]'s testimony other than as her opinion that the victim was telling the truth"); *State v. Jennings*, 394 S.C. 473, 480, 716 S.E.2d 91, 94 (2011) ("There is no other way to interpret the language used in the reports other than to mean the forensic interviewer believed the children were being truthful.").

We conclude there is no rational way to interpret Williamson's statement other than as her opinion Victim told the truth. If, as Williamson stated during the interview, the rules were "[n]obody ever gets to touch your private parts or make you touch theirs," then the only way Gurley could have "broke[n] the rules" is if Victim's allegations were true. Thus, this statement indirectly vouched for Victim's believability and suggested to the jury that Williamson believed Victim's allegations, both of which *Kromah* prohibits. *See* 401 S.C. at 360, 737 S.E.2d at 500.

The State argues that because Williamson's statement "[Gurley] broke the rules" occurred on video and was not made from the witness stand, the same dangers of improper vouching do not exist. We find this artificial distinction untenable. Our supreme court found as much in *Jennings* when it held a forensic interviewer's *written reports* improperly vouched for the victims' veracity. *See* 394 S.C. at 480, 716 S.E.2d at 94 ("We find the trial court abused its discretion in allowing the State to introduce the reports because they *allowed the forensic interviewer to improperly vouch for the children's veracity*." (emphasis added)). Moreover, in *McKerley*, this court declined to draw a similar distinction between live testimony and written reports. *See* 397 S.C. at 463–64, 725 S.E.2d at 141 ("The State argues *Jennings* is distinguishable from this case because the offending statement in *Jennings* was contained in a written report, whereas the statement here was introduced as live testimony. We find *Jennings* controlling and hold the trial court erred in admitting this portion of [the interviewer's] testimony."). Thus, Williamson's statement "[Gurley] broke the rules" was not innocuous simply because it appeared on video and was not uttered from the witness stand. Therefore, admission of the video was error.

## III.

Gurley also challenges Crawford's response to the State's question, "Did you see any evidence of coaching with [Victim]?" In *State v. Hill*, this court considered a situation in which a forensic interviewer was qualified as an expert and testified about signs of coaching. 394 S.C. at 285–86, 715 S.E.2d at 371. This court found no reversible error in the admission of this testimony, stating,

> [T]he forensic interviewer never addressed the veracity of Victim. He testified only that he saw the types of details in Victim's interview that he would look for to determine whether a child had been coached. He gave no opinion on whether Victim was being truthful, or even that Victim had not, in fact, been coached.

*Id.* at 295, 715 S.E.2d at 376–77 (footnote omitted).

Here, however, Crawford's testimony went further. The State's question, "Did you see any evidence of coaching with [Victim]," sought Crawford's opinion on whether Victim had been coached. Although Crawford did not expressly state whether Victim had been coached, her answer can only be interpreted as an opinion that Victim had not been coached because Crawford stated (1) only she and Victim were in the room; (2) Mother was never in the room; (3) Victim was very detailed; and (4) Victim was consistent.

This testimony that Victim had not been coached indirectly vouched for Victim's credibility and believability, violating the parameters set forth in *Kromah*. *See* 401 S.C. at 358–59, 737 S.E.2d at 500 ("Specifically, it is improper for a witness to testify as to his or her opinion about the credibility of a child victim in a sexual abuse matter.").

Crawford did, however, subtly suggest Gurley had coached Victim. Describing a picture Victim drew of one of the alleged incidents, Crawford noted it showed Gurley and Victim under a sheet and depicted Gurley saying to Victim "don't tell." Shortly thereafter, when the State asked Crawford about coaching, she responded that in her experience, coaching most often occurs when victims "are coached by the offender not to tell."

## IV.

Having found error in admission of the video of the forensic interview and Crawford's testimony, we next address whether these errors were harmless. We will not set aside a conviction because of insubstantial errors not affecting the result. *Id.* at 360, 737 S.E.2d at 501. For an error to be harmless, we must determine beyond a reasonable doubt the error did not contribute to the verdict. *See State v. Tapp*, 398 S.C. 376, 389–90, 728 S.E.2d 468, 475 (2012). "The determination whether a bolstering error is harmless depends on whether the case turns on the credibility of the victim." *State v. Chavis*, 412 S.C. 101, 110, 771 S.E.2d 336, 341 (2015).

The State's evidence primarily consisted of Victim's testimony and other hearsay evidence of her account. There was no physical evidence, and Victim's versions of two of the three alleged incidents were contradicted by her own family members and several of Gurley's witnesses. Thus, because the case turned on Victim's credibility, we cannot say the evidentiary errors were harmless.

Accordingly, Gurley's conviction and sentence are reversed. In light of our decision, we decline to address the remaining issues. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (finding an appellate court need not address remaining issues on appeal when its determination of a prior issue is dispositive).

**REVERSED.**

**GEATHERS, MCDONALD, and HILL, JJ., concur.**