532 S.E.2d 306

**The STATE, Respondent,**

v.

**Cecil Heyward DEMPSEY, Appellant.**

No. 3179.

Court of Appeals of South Carolina.

Submitted May 8, 2000.

Decided June 5, 2000.

566

Assistant Appellate Defender M. Anne Pearce, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor Walter L. Bailey, Jr., of Summerville, for respondent.

HUFF, Judge:

A jury convicted Cecil "Tray" Dempsey of first degree criminal sexual conduct with a minor and the trial court sentenced him to thirty years imprisonment. Dempsey appeals, arguing the trial court erred in denying his mistrial motion. We affirm.

## FACTS/PROCEDURAL HISTORY

In June 1997 Victim, then 10 years old, informed his aunt that his mother's boyfriend had been sexually assaulting him for the past year.[1] The boy's aunt, Patsy Yocum, immediately took Victim to a physician to be examined for sexual abuse. At the time, Victim lived with his mother and her boyfriend, Tray Dempsey. When Yocum told her sister (Victim's mother) about the abuse, she moved out of Dempsey's house for a short time but returned within days. Victim now lives with his father in North Charleston.

---

1. Victim was eleven years old at the time of trial.

Yocum filed a police report and Victim described the assaults to an investigator and a DSS social worker. Victim also told his father and his father's fiancee about the assaults.

An Orangeburg County grand jury subsequently indicted Dempsey for first degree criminal sexual assault with a minor. The case was tried before a jury on April 20–21, 1998. At trial, Victim testified the abuse occurred in his room, Dempsey's room, the kitchen, and in a camper at Dempsey's house. Victim testified he put toilet paper in his underwear to ease the pain from the rapes. Victim further testified appellant "jacked me up against the wall and said if I told anybody that he would hurt me." Victim's aunt also testified and stated she once overheard Dempsey yell at Victim to "shut his d- - - sucking lips."

Dr. Donald Elsey, a child sexual abuse counselor, testified for the State as an expert in child sexual abuse. Before trial, the defense moved to exclude Elsey's testimony, arguing it was more prejudicial than probative and lacked a proper foundation. The trial judge reserved ruling on the motion. Elsey testified he conducted approximately thirteen counseling sessions with Victim and concluded Victim had been repeatedly sexually abused. The solicitor then asked Elsey about the methods used to determine a victim's credibility:

Q: What do you do ... to determine that the child is telling the truth?

A: ... We assess if a child is believable, we assess if they've been coached, we assess to see if somebody has told them—

Defense counsel: I've got an objection, your honor.

The Court: I'll allow him to answer those questions, but I won't let him go any further than that.

. . . .

Q: Did you find any abnormal answers or responses from Michael that would lead you to believe that he wasn't telling the truth?

A: No, I did not.

. . . .

Q: And what did you base that conclusion (occurrence of sexual abuse) on?

A: Well, we look for certain things when we're assessing the child to assess their credibility, to assess their reliability.... One of the most obvious things is if a child tells you that they've been sexually abused. Unfortunately, when a child says that, ninety-five to ninety-nine percent of the time, that's the truth. And that's based not only on my opinion, but it's based on the research....

Defense Counsel: Your honor, I have another objection.

The Court: I'll let you cross-examine him on the research. Overruled.

Q: Just continue.

A: Okay, basically, as I've been with Michael I've concluded that he was being reliable....

During cross examination, Elsey reiterated: "As I mentioned, very, very rarely does a child say that they've been sexually abused when they haven't been...." The trial court, sua sponte, then sustained Dempsey's previous objection:

I'm going to sustain at this time the defense's objection to this witness's previous testimony as to ninety-five percent, I believe, a rate you gave as being truthful, as being unfair corroboration and prejudicial to this defendant. Ladies and gentlemen, you are to disregard the witness's testimony as to the percentage of truthfulness in these kinds of cases.

At the conclusion of Elsey's testimony, defense counsel moved for a mistrial, claiming Elsey's testimony usurped the province of the jury and that the resulting prejudice could not be overcome. The court denied the motion but gave a curative instruction to the jury. The judge then explained that Elsey improperly commented on whether or not he believed Victim:

The last question put to Dr. Elsey solicited a response from him which ... was not permissible. And ... it lent itself to whether or not the victim in this case was being truthful. To paraphrase the question from the solicitor ... did you perform certain tests of the victim. Was there anything to indicate that he was not being truthful? That type of questioning, we call it corroboration, is not allowed in a case such as this.... The witness who testified as an expert is also allowed to testify to what we call trauma or rape

syndrome, if you will. Now, his testimony should have been limited to that. However, in the last questioning to this particular witness, he was allowed to comment on whether or not he believed the victim, and that's not allowed.

The judge struck Elsey's last answer from the record and informed the jury that "his last answer to the State's question that lent itself to whether or not there was any indication that the victim was being untruthful, I want you to disregard that."

Following a short break, Dr. Elizabeth Baker testified that she examined Victim for signs of physical trauma and found none. She further testified this was not unusual, however, stating that "[w]hen you're talking about anal penetration, it is unusual to find any evidence of trauma, especially if it's been more than three days from the . . . time that the incident happened. . . . Most of the time you're not going to find any kind of physical evidence like tearing or scarring, or anything like that."

Victim's mother, on the other hand, testified for the defense. She stated she loved Dempsey, was still living with him at the time of trial, and intended to stay with him. She also claimed Victim had told her "that he loves Tray and he wants to come home to me and Tray both."

The jury convicted Dempsey and the trial court imposed a 30–year sentence. This appeal followed.

## LAW/ANALYSIS

Dempsey argues the trial court erred in refusing to grant a mistrial following Elsey's testimony. We disagree.

The decision to grant or deny a mistrial is within the sound discretion of the trial judge and will not be overturned on appeal absent an abuse of discretion. *State v. Kelsey,* 331 S.C. 50, 502 S.E.2d 63 (1998). Accordingly, a mistrial should not be ordered in every case where incompetent evidence is received and later stricken from the record. *State v. Simpson,* 325 S.C. 37, 479 S.E.2d 57 (1996). An instruction to disregard incompetent evidence usually is deemed to have cured any error in its admission unless on the facts of the particular case it is probable that, notwithstanding such instruction, the accused was prejudiced. *State v. Johnson,* 334 S.C. 78, 512 S.E.2d 795 (1999). Furthermore, the granting of

a mistrial motion is an extreme measure to be taken only where an incident is so grievous that its prejudicial effect can be removed in no other way. *Kelsey,* 331 S.C. at 70, 502 S.E.2d at 73.

Dempsey correctly asserts Elsey's testimony improperly vouched for Victim's credibility.[2] *See State v. Dawkins,* 297 S.C. 386, 377 S.E.2d 298 (1989) (testimony of psychiatrist who treated child victim of sexual assault was improper where psychiatrist answered "yes" to solicitor's question of whether, based on his examination and observations of the victim, he was "of the impression that [the victim's] symptoms [were] genuine"); *State v.. Morgan,* 326 S.C. 503, 515, 485 S.E.2d 112, 119 (Ct.App.1997) (quoting *State v. Milbradt,* 305 Or. 621, 756 P.2d 620, 624 (1988) ("We have said before, and we will say it again, this time with emphasis—no psychotherapist may render an opinion on whether a witness is credible in any trial in this state. The assessment of credibility is for the trier of fact and not for psychotherapists.")). We conclude, however, that the trial court did not abuse its discretion in denying Dempsey's mistrial motion.

In our view the trial court's curative instructions during and immediately following Elsey's testimony sufficiently cured any prejudice to Dempsey flowing from the improper vouching. In *State v. Dawkins,* supra, our supreme court addressed the denial of a mistrial motion under very similar factual circumstances. There, as here, a professional treating therapist in a child sex abuse case improperly vouched for the victim's credibility by answering affirmatively when asked his opinion as to whether the child's symptoms of sexual abuse were "genuine." Although the trial court sustained his objection, Dawkins immediately moved for a mistrial. The court denied the motion but instructed the jury as follows:

Ladies and gentlemen of the jury panel, people can't come in and give their opinions as to what they feel took place.

---

2. To the extent Dempsey argues Dr. Elsey's testimony was inadmissible rape trauma evidence subject to analysis under *State v. Schumpert,* 312 S.C. 502, 435 S.E.2d 859 (1993), the issue is not preserved. *See State v. Nichols,* 325 S.C. 111, 481 S.E.2d 118 (1997) (issues may not be raised for the first time on appeal but must have been raised to the trial court to be preserved for appellate review); *State v. Byram,* 326 S.C. 107, 485 S.E.2d 360 (1997) (where an argument was neither raised to nor ruled upon by the trial judge it is not preserved for review).

That's not appropriate. The only thing that witnesses can do is to come in and tell you what they've seen and what they've observed. It's solely left up to you, ladies and gentlemen, to make a determination as to the facts in this case. So, you would please disregard the last statement made by this witness. That's an encroachment on your province to decide this case based on what you've seen and heard, free from anyone else's opinions.

*Dawkins,* 297 S.C. at 393, 377 S.E.2d at 302.

Under the circumstances of this case, the curative instruction given by the trial court, substantially similar to that approved by the supreme court in *Dawkins,* cured any error in the admission of Elsey's testimony because it "was not of such magnitude to effect the outcome of the trial." *Id.* at 394, 377 S.E.2d at 302. Accordingly, the trial judge did not abuse his discretion in denying Dempsey's mistrial motion. *See id.; State v. Merriman,* 287 S.C. 74, 82, 337 S.E.2d 218, 223 (Ct.App.1985) (any prejudice resulting from SLED agent's testimony concerning the very issue to be decided by the jury was corrected by the trial court's "very thorough" curative instruction); *see also State v. Craig,* 267 S.C. 262, 227 S.E.2d 306 (1976).

For the foregoing reasons, the decision of the trial court is **AFFIRMED.**

HEARN, C.J., and ANDERSON, J., concur.