768 S.E.2d 246

The STATE, Respondent,

v.

Damon T. BROWN, Appellant.

Appellate Case No. 2012–213548.

No. 5288.

Court of Appeals of South Carolina.

Heard Oct. 7, 2014.

Decided Jan. 7, 2015.

Rehearing Denied Feb. 11, 2015.

334

Appellate Defender Lara M. Caudy, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Senior Assistant Deputy Attorney General Deborah R.J. Shupe, both of Columbia; and Solicitor W. Walter Wilkins, III, of Greenville, for Respondent.

WILLIAMS, J.

Damon Tyler Brown (Appellant) appeals his convictions for one count of first-degree criminal sexual conduct (CSC) with a minor, three counts of lewd act upon a child, and three counts of first-degree sexual exploitation of a minor. Appellant argues the circuit court erred in allowing the State's child abuse dynamics and delayed disclosures expert to testify regarding general behavioral characteristics because her testimony (1) concerned information within the realm of lay knowledge, (2) improperly bolstered the minor victims' credibility, and (3) prejudiced Appellant's case. We affirm.

**FACTS/PROCEDURAL HISTORY**

On November 20, 2012, the Pickens County Grand Jury indicted Appellant on one count of first-degree CSC with a

minor, three counts of lewd act upon a child, and three counts of first-degree sexual exploitation of a minor. The case was called for a jury trial on November 26, 2012.

During the period of sexual abuse, between 2003 and 2006, Appellant lived with his sixteen-year-old girlfriend and her family, including her two brothers (Older Brother and Younger Brother), as well as her mother and stepfather, in a two-bedroom mobile home in Central, South Carolina. Older Brother was ten years old and Younger Brother was eight years old when Appellant first began touching them inappropriately around their private areas.

At trial, Older Brother described countless graphic incidents in which Appellant sexually abused him in the family's mobile home, testifying the abuse occurred almost daily until he was twelve years old. According to Older Brother, Appellant also abused Younger Brother during this time. Younger Brother corroborated Older Brother's recollections of Appellant repeatedly abusing them, testifying the abuse lasted until he was ten years old. Further, Younger Brother recalled one occasion when Appellant forced him to anally penetrate the boys' best friend (Minor Friend) in the bathroom of the mobile home. Minor Friend corroborated Younger Brother's testimony regarding the bathroom incident and testified Appellant sexually abused her and the boys in the mobile home on two occasions. According to the three minor victims, Appellant's only rule was they could never tell anyone what happened when he played with them. If the minor victims broke the rule, Appellant indicated they would get blamed for everything and stated he would "get really mad and something bad would happen."

Older Brother did not disclose the abuse to authorities until May 2009. Although Younger Brother initially refused to speak with law enforcement at that time, he later gave police a written statement describing the abuse in July 2009. Law enforcement then contacted Minor Friend, who described the abuse in a written statement in July 2009 and provided a more detailed account in an August 2010 statement. Older Brother testified he did not provide details about the other minor victims when he first reported the abuse because he thought everybody would hate him or be mad at him. Younger

Brother testified he did not initially tell law enforcement what happened to him because he was embarrassed. Likewise, Minor Friend testified she thought people would blame her for not stopping the abuse and view her as "this disgusting little girl." Appellant extensively cross-examined Older Brother, Younger Brother, and Minor Friend regarding their delayed disclosure of the abuse, as well as discrepancies between the statements they gave to police and the testimony they offered at trial.

The circuit court then held an in-camera hearing to determine the admissibility of testimony from the State's expert witness, Ms. Shauna Galloway–Williams. After the hearing, the circuit court qualified Galloway–Williams as an expert in child abuse dynamics and disclosure, concluding her testimony was relevant and would assist the jury because the seated jurors "would not have any prior knowledge from family members or otherwise as to sex abuse directly."

Subsequently, Galloway–Williams testified she did not review any incident reports or statements associated with this case, never met with or interviewed the minor victims prior to trial, and was not present for their testimony during trial. In fact, her only knowledge about the case came from discussions with the Solicitor's Office. According to Galloway–Williams, research indicates that between seventy and eighty percent of abused children delay disclosing the abuse into adulthood. Further, she stated children delay disclosing abuse for a number of reasons, including: (1) fear of consequences to themselves, the perpetrator, or someone the child loves; (2) the child's age; (3) the child's relationship to the perpetrator; (4) a lack of vocabulary or language to describe what has happened to them; (5) threats by the perpetrator; (6) grooming by the perpetrator; and (7) the perpetrator's normalization of the abusive conduct. Galloway–Williams further explained that most disclosures happen accidentally, and children generally reveal more details over time throughout the disclosure process. When children suffer chronic abuse, she stated it is more difficult for them to sort out the timing of individual incidents and the order in which they occurred. Galloway–Williams also explained that having a close and trusting relationship with the perpetrator can have a very strong impact on whether a child feels like he or she can

disclose the abuse. Finally, she testified that child abuse victims will sometimes tolerate sexual abuse to maintain a relationship, particularly if the perpetrator is someone they love and trust.

During its closing argument, the State stressed that Galloway–Williams never met or interviewed the victims; rather, she only testified about symptoms of child abuse in general. The State then related the symptoms she discussed, including delayed disclosure, to those exhibited by the individual victims in this case. At the conclusion of trial, the jury found Appellant guilty of all seven counts. The circuit court sentenced Appellant to a total of 359 months incarceration: 176 months for first-degree CSC, 128 months for one count of lewd act upon a child, 55 months consecutive for one count of first-degree sexual exploitation of a minor, 55 months concurrent for each of the two remaining counts of first-degree sexual exploitation of a minor, and 128 months concurrent for each of the remaining two counts of lewd act upon a child. This appeal followed.

## ISSUE ON APPEAL

Did the circuit court abuse its discretion by admitting testimony from the State's expert on child abuse dynamics and delayed disclosures regarding general behavioral characteristics of child sex abuse victims?

## STANDARD OF REVIEW

The decision of whether to admit or exclude testimony from an expert witness is within the sound discretion of the circuit court. *State v. Price,* 368 S.C. 494, 498, 629 S.E.2d 363, 365 (2006) (citations omitted). The circuit court's decision to admit expert testimony will not be reversed on appeal absent "a manifest abuse of discretion accompanied by probable prejudice." *State v. Douglas,* 369 S.C. 424, 429, 632 S.E.2d 845, 847–48 (2006) (citations omitted). An abuse of discretion occurs when the circuit court's conclusions "either lack evidentiary support or are controlled by an error of law." *State v. Kromah,* 401 S.C. 340, 349, 737 S.E.2d 490, 495 (2013) (quoting *Douglas,* 369 S.C. at 429–30, 632 S.E.2d at 848) (internal quotation marks omitted). "A [circuit] court's ruling on the admissibility of an expert's testimony constitutes an abuse of discretion where the ruling is manifestly arbitrary, unreason-

able, or unfair." *State v. Grubbs*, 353 S.C. 374, 379, 577 S.E.2d 493, 496 (Ct.App.2003) (citing *Means v. Gates*, 348 S.C. 161, 166, 558 S.E.2d 921, 924 (Ct.App.2001)). To show prejudice, the appellant must prove "that there is a reasonable probability the jury's verdict was influenced by the challenged evidence or the lack thereof." *Fields v. Reg'l Med. Ctr. Orangeburg*, 363 S.C. 19, 26, 609 S.E.2d 506, 509 (2005) (citing *Means*, 348 S.C. at 166, 558 S.E.2d at 924).

## LAW/ANALYSIS

Appellant argues the circuit court abused its discretion by allowing the State's expert witness on child abuse dynamics and delayed disclosures to testify regarding general behavioral characteristics of sex abuse victims because her testimony (1) was not outside the realm of lay testimony, (2) improperly bolstered the minor victims' testimony, and (3) prejudiced Appellant's case.

### I. Lay Testimony

■ Appellant first argues the circuit court abused its discretion by allowing Galloway–Williams to testify as an expert because the subject matter of her testimony was not beyond the ordinary knowledge of the jury. Appellant contends the jury did not require expert knowledge or opinions to understand why the minor victims delayed disclosing the abuse, as well as what caused them to eventually disclose, because the jury could make its own determination based on the minor victims' testimony. We disagree.

■ A party is allowed to present expert testimony to the factfinder if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." *Grubbs*, 353 S.C. at 379, 577 S.E.2d at 496 (quoting Rule 702, SCRE) (internal quotation marks omitted). "Expert testimony may be used to help the jury determine a fact in issue based on the expert's specialized knowledge, experience, or skill and is necessary in cases in which the subject matter falls outside the realm of ordinary lay knowledge." *Watson v. Ford Motor Co.*, 389 S.C. 434, 445, 699 S.E.2d 169, 175 (2010). In *Watson*, our supreme court

reviewed the differences between expert testimony and lay testimony:

Expert testimony differs from lay testimony in that an expert is permitted to state an opinion based on facts not within his firsthand knowledge or may base his opinion on information made available before the hearing so long as it is the type of information that is reasonably relied upon in the field to make opinions. On the other hand, a lay witness may only testify as to matters within his personal knowledge and may not offer opinion testimony which requires special knowledge, skill, experience, or training.

*Id.* at 445–46, 699 S.E.2d at 175. Further, the court provided a three-prong test that a circuit court must consider before allowing the jury to hear expert testimony:

First, the [circuit] court must find that the subject matter is beyond the ordinary knowledge of the jury, thus requiring an expert to explain the matter to the jury. Next, while the expert need not be a specialist in the particular branch of the field, the [circuit] court must find that the proffered expert has indeed acquired the requisite knowledge and skill to qualify as an expert in the particular subject matter. Finally, the [circuit] court must evaluate the substance of the testimony and determine whether it is reliable.[1]

*Id.* at 446, 699 S.E.2d at 175.

In *State v. Weaverling,* this court confirmed that "both expert testimony and behavioral evidence are admissible as rape trauma evidence to prove a sexual offense occurred where the probative value of such evidence outweighs its prejudicial effect." 337 S.C. 460, 474, 523 S.E.2d 787, 794 (Ct.App.1999) (quoting *State v. Schumpert,* 312 S.C. 502, 506, 435 S.E.2d 859, 862 (1993)) (internal quotation marks omitted). Further, this court made the following observations:

---

1. Because Appellant did not challenge Galloway–Williams' qualifications as an expert in child abuse dynamics and delayed disclosures, we decline to address the second prong of the *Watson* test. *See State v. Tyndall,* 336 S.C. 8, 16–17, 518 S.E.2d 278, 282–83 (Ct.App.1999) (noting an issue not argued in the appellate brief is deemed abandoned on appeal); Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal.").

Expert testimony concerning common behavioral character-
istics of sexual assault victims and the range of responses to
sexual assault encountered by experts is admissible. Such
testimony is relevant and helpful in explaining to the jury
the typical behavior patterns of adolescent victims of sexual
assault. It assists the jury in understanding some of the
aspects of the behavior of victims and provides insight into
the abused child's often strange demeanor.

*Id.* at 474–75, 523 S.E.2d at 794. Therefore, this court held
the expert testimony was properly admitted because it was
relevant and simply explained the effect of sexual abuse on a
victim's subsequent conduct. *Id.* at 475, 523 S.E.2d at 794–95.
Likewise, in *State v. White,* our supreme court confirmed the
admissibility of expert testimony and behavioral evidence in
sexual abuse cases, holding such testimony was relevant re-
gardless of the victim's age. 361 S.C. 407, 415, 605 S.E.2d
540, 544 (2004). The supreme court stated expert testimony
"may be more crucial" when the victims are children because
their "inexperience and impressionability often render them
unable to effectively articulate" incidents of criminal sexual
abuse. *Id.* at 414–15, 605 S.E.2d at 544.

In the instant case, the circuit court overruled Appellant's
objection to Galloway–Williams testifying as an expert and
found that, based on the jurors' qualifications and their re-
sponses to questions during voir dire, the empaneled jury
"would not have any prior knowledge from family members or
otherwise as to sex abuse directly." At trial, Appellant cross-
examined the minor victims extensively regarding their delays
in disclosure as well as the varying accounts of the abuse they
gave authorities. Indeed, the minor victims delayed disclosing
the abuse for almost three years, were unable to recall specific
days or dates on which they were abused, gave varying
accounts of certain instances of abuse, and divulged more facts
each time they spoke about the abuse. Such behavior un-
doubtedly became a fact at issue in this case, raising questions
of credibility or accuracy that might not be explained by
experiences common to jurors. *See Weaverling,* 337 S.C. at
474–75, 523 S.E.2d at 794. Accordingly, we find Galloway–
Williams' specialized knowledge of the behavioral characteris-
tics of child sex abuse victims was relevant and crucial in
assisting the jury's understanding of why children might delay

disclosing sexual abuse, as well as why their recollections may become clearer each time they discuss the instances of abuse. *See White,* 361 S.C. at 414–15, 605 S.E.2d at 544; *Weaverling,* 337 S.C. at 474–75, 523 S.E.2d at 794.

■ Numerous jurisdictions considering this issue have similarly concluded it is more appropriate for an expert to explain the behavioral traits of child sex abuse victims to a jury. *See, e.g., Keri v. State,* 179 Ga.App. 664, 347 S.E.2d 236, 238 (1986) (finding expert testimony assisted the jury in understanding why sexually abused victims are secretive and frightened, why they may act out and become disciplinary problems, and why they could not give specific dates for the acts the defendant allegedly committed); *State v. Carpenter,* 147 N.C.App. 386, 556 S.E.2d 316, 321–22 (2001) (stating that the nature of child sexual abuse places lay jurors at a disadvantage and expert witness testimony regarding the fact that delayed and incomplete disclosure is not unusual in cases of child abuse was appropriate); *see also* John E.B. Meyers, *Expert Testimony in Child Sexual Abuse Litigation: Consensus and Confusion,* 14 U.C. DAVIS J. JUV. L. & POL'Y 1, 45–46 (2010) ("Psychological research demonstrates that delayed reporting is common among sexually abused children. Frequently when children finally disclose, they give slightly different versions of the abuse to different interviewers. . . . Thus, from a psychological point of view, expert testimony about delay, inconsistency, and recantation is not controversial. From the legal perspective, such testimony is not worrisome."). We believe the unique and often perplexing behavior exhibited by child sex abuse victims does not fall within the ordinary knowledge of a juror with no prior experience—either directly or indirectly—with sexual abuse. The general behavioral characteristics of child sex abuse victims are, therefore, more appropriate for an expert qualified in the field to explain to the jury, so long as the expert does not improperly bolster the victims' testimony.

Accordingly, we hold the circuit court properly admitted Galloway–Williams' expert testimony because child abuse dynamics and delayed disclosures were subjects beyond the ordinary knowledge of the jury.

## II. Bolstering

Next, Appellant argues the circuit court erred in admitting Galloway–Williams' expert testimony because it improperly bolstered the minor victims' testimony. We disagree.

██ "[E]ven though experts are permitted to give an opinion, they may not offer an opinion regarding the credibility of others." *State v. Portillo,* 408 S.C. 66, 71, 757 S.E.2d 721, 724 (Ct.App.2014) (quoting *Kromah,* 401 S.C. at 358, 737 S.E.2d at 499) (alteration in original) (internal quotation marks omitted). "The assessment of witness credibility is within the exclusive province of the jury." *State v. McKerley,* 397 S.C. 461, 464, 725 S.E.2d 139, 141 (Ct.App.2012) (citing *State v. Wright,* 269 S.C. 414, 417, 237 S.E.2d 764, 766 (1977)). Consequently, "it is improper for a witness to testify as to his or her opinion about the credibility of a child victim in a sexual abuse matter." *Kromah,* 401 S.C. at 358–59, 737 S.E.2d at 500 (citations omitted).

In *Kromah,* our supreme court held forensic interviewers should avoid (1) stating the child was instructed to be truthful; (2) offering a direct opinion on the "child's veracity or tendency to tell the truth"; (3) indirectly vouching for the child, "such as stating the interviewer has made a 'compelling finding' of abuse"; (4) indicating "the interviewer believes the child's allegations in the current matter"; or (5) opining "the child's behavior indicated the child was telling the truth." 401 S.C. at 360, 737 S.E.2d at 500.

██ In addition to *Kromah,* Appellant cites several cases in support of his argument that testimony from the State's expert witness was unnecessary and only offered to improperly bolster the minor victims' testimony. *See id.* at 356, 358, 737 S.E.2d at 498–99 (finding the forensic interviewer's testimony regarding a " 'compelling finding' of physical child abuse" was problematic and noting experts "may not offer an opinion regarding the credibility of others"); *Smith v. State,* 386 S.C. 562, 569, 689 S.E.2d 629, 633 (2010) (finding "[t]he forensic interviewer's hearsay testimony impermissibly corroborated the [v]ictim's identification of [the defendant] as the assailant, and the forensic interviewer's subsequent opinion testimony improperly bolstered the [v]ictim's credibility"); *McKerley,* 397 S.C. at 465, 725 S.E.2d at 142 (finding the

circuit court erred in admitting the forensic interviewer's testimony, which included "comments on the credibility of the victim's account of the alleged sexual assault"). In contrast to the instant case, these cases involved expert testimony from forensic interviewers who interviewed the victims. Moreover, the experts in *Kromah, Smith,* and *McKerley* each indicated, in some manner, that they believed the victims' allegations of abuse. In this case, however, Galloway–Williams never interviewed the victims and had no knowledge of the facts of the case beyond her discussions with the solicitor's office prior to trial. This case is further distinguishable because Galloway–Williams never commented—directly or indirectly—about the credibility of the victims' allegations or testimony, nor did she make any of the statements prohibited by our supreme court in *Kromah. See Kromah,* 401 S.C. at 360, 737 S.E.2d at 500.

Appellant also relies on several cases in which our appellate courts have held a forensic interviewer's testimony was improperly admitted at trial. *See State v. Jennings,* 394 S.C. 473, 480, 716 S.E.2d 91, 94 (2011) ("For an expert to comment on the veracity of a child's accusations of sexual abuse is improper."); *State v. Dawkins,* 297 S.C. 386, 393–94, 377 S.E.2d 298, 302 (1989) (finding testimony of psychiatrist who treated child victim of sexual assault was improper because psychiatrist answered "yes" to solicitor's question regarding whether, based on his examination and observations of the victim, he was "of the impression that [the victim's] symptoms [were] genuine"); *State v. Dempsey,* 340 S.C. 565, 571, 532 S.E.2d 306, 309–10 (Ct.App.2000) (finding the "professional treating therapist in [this] child sex abuse case improperly vouched for the victim's credibility by answering affirmatively when asked his opinion as to whether the child's symptoms of sexual abuse were 'genuine' "). In *Jennings,* our supreme court held the written report prepared by a forensic interviewer regarding her interviews with the victims was inadmissible hearsay and impermissibly vouched for the victims' credibility because the expert concluded the victims "provided a compelling disclosure of abuse." 394 S.C. at 480, 716 S.E.2d at 94. Both *Dawkins* and *Dempsey* involved therapists who actually treated the victims and offered testimony clearly indicating they believed the victims were telling the truth about the allegations of sexual abuse. *Dawkins,* 297 S.C. at 393–94, 377 S.E.2d at 302; *Dempsey,* 340 S.C. at 571, 532 S.E.2d at 309–

10. Contrary to the experts in those cases, Galloway–Williams (1) was not testifying as a forensic interviewer, (2) never interviewed the victims, (3) did not prepare a report for her testimony, (4) did not express an opinion or belief regarding the credibility of child sex abuse victims' allegations, and (5) did not express an opinion regarding the credibility of the minor victims in this case. Thus, we agree with the State's argument that the cases cited by Appellant are factually and legally distinguishable from this case.

Further, because Galloway–Williams never commented on the credibility of the minor victims, but rather offered admissible expert testimony regarding the general behavioral characteristics of child sex abuse victims, we find such testimony did not improperly bolster the minor victims' testimony. Although Galloway–Williams testified that between seventy and eighty percent of children delay disclosing abuse, she never commented on the applicability of that statistic to the victims in this case. Instead, Galloway–Williams testified in broad terms regarding various reasons sex abuse victims may delay disclosure and how the disclosure process progresses more generally. The fact that her testimony corroborated some of the minor victims' reasons for delaying disclosure of the abuse does not mean her testimony improperly bolstered their accounts. See Weaverling, 337 S.C. at 474, 523 S.E.2d at 794 ("An expert may give an opinion based upon personal observations or in answer to a properly framed hypothetical question that is based on facts supported by the record." (quoting State v. Evans, 316 S.C. 303, 311, 450 S.E.2d 47, 52 (1994) (internal quotation marks omitted))). Galloway–Williams merely offered reasons why children might delay disclosing instances of sexual abuse to assist the trier of fact's understanding of the complex dynamics of child victims in sexual abuse cases.

Accordingly, we hold the circuit court properly admitted Galloway–Williams' expert testimony over Appellant's objection at trial because she did not inappropriately vouch for the victims' allegations and, therefore, did not improperly bolster their testimony.

## III. Prejudice

Finally, Appellant argues the circuit court erred in admitting Galloway–Williams' testimony because it was cumulative and highly prejudicial to Appellant. We disagree.

■■■■■ Under Rule 403, SCRE, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice ... or needless presentation of cumulative evidence." "Improper corroboration testimony that is merely cumulative to the victim's testimony, however, cannot be harmless, because it is precisely this cumulative effect which enhances the devastating impact of improper corroboration." *Jolly v. State*, 314 S.C. 17, 21, 443 S.E.2d 566, 569 (1994) (emphasis omitted) (citation omitted). Nevertheless, "both expert testimony and behavioral evidence are admissible ... where the probative value of such evidence outweighs its prejudicial effect." *Weaverling*, 337 S.C. at 474, 523 S.E.2d at 794 (citing *Schumpert*, 312 S.C. at 506, 435 S.E.2d at 862).

> [E]ven though experts are permitted to give an opinion, they may not offer an opinion regarding the credibility of others. It is undeniable that the primary purpose for calling a "forensic interviewer" as a witness is to lend credibility to the victim's allegations. When this witness is qualified as an expert[,] the impermissible harm is compounded.

*Portillo*, 408 S.C. at 71, 757 S.E.2d at 724 (quoting *Kromah*, 401 S.C. at 358, 737 S.E.2d at 499) (alteration in original). In *Kromah*, our supreme court expressed its concerns about forensic interviewers testifying as experts at trial:

> [W]e can envision no circumstance where [a forensic interviewer's] qualification as an expert at trial would be appropriate. Forensic interviewers might be useful as a tool to aid law enforcement officers in their investigative process, but this does not make their work appropriate for use in the courtroom. The rules of evidence do not allow witnesses to vouch for or offer opinions on the credibility of others, and the work of a forensic interviewer, by its very nature, seeks to ascertain whether abuse occurred at all, i.e., whether the victim is telling the truth, and to identify the source of abuse.... [A]n interviewer's statement that there is a "compelling finding" of physical abuse relies not just on objective evidence such as the presence of injuries, but on the statements of the victim and the interviewer's subjective belief as to the victim's believability. However, an interviewer's expectations or bias, the suggestiveness of the interviewer's questions, and the interviewer's examination of

possible alternative explanations for any concerns[ ] are all factors that can influence the interviewer's conclusions in this regard. Such subjects, while undoubtedly important in the investigative process, are not appropriate in a court of law when they run afoul of evidentiary rules and a defendant's constitutional rights.

401 S.C. at 357 n. 5, 737 S.E.2d at 499 n. 5.

■ We find Galloway–Williams' testimony did not merely restate or improperly corroborate the minor victims' testimony. Similar to the expert in *Weaverling*, Galloway–Williams did not interview the victims prior to testifying at trial and her knowledge of this case was limited to discussions with the solicitor. *See Weaverling*, 337 S.C. at 473, 523 S.E.2d at 794. Further, she did not express an opinion on the credibility of the minor victims in this case. *Cf. Dawkins v. State*, 346 S.C. 151, 156–57, 551 S.E.2d 260, 263 (2001) (finding the testimony of four witnesses corroborating what the victim "told them regarding her alleged sexual abuse served only to bolster [the victim's] credibility" and concluding such improper corroboration had a " 'devastating impact' on petitioner's trial"). Based on the foregoing, we find her testimony did not improperly corroborate—and, therefore, was not cumulative to—the minor victims' testimony.

■ Moreover, we find the high probative value of Galloway–Williams' testimony outweighed any prejudicial effect on Appellant's case. *See* Rule 403, SCRE. Galloway–Williams' testimony was relevant to help the jury understand various aspects of victims' behavior and provided insight into the often strange demeanors of sexually abused children. *See Weaverling*, 337 S.C. at 474, 523 S.E.2d at 794. Additionally, her testimony assisted in explaining the psychological effects of sexual abuse on child victims' behavior—a topic about which neither the children nor a lay witness did or could have properly testified. Galloway–Williams' testimony was also crucial in explaining to the jury why child sex abuse victims are often unable to effectively relay incidents of criminal sexual abuse. *See White*, 361 S.C. at 414–15, 605 S.E.2d at 544 (noting "[t]he inexperience and impressionability of children often render them unable to effectively articulate the events giving rise to criminal sexual behavior"). As noted

above, Galloway–Williams did not repeat any of the minor victims' allegations, vouch for their credibility, or otherwise make any statements that improperly corroborated their testimony at trial. In addition, she was not qualified as an expert in forensic interviewing. Thus, the concerns our supreme court expressed in *Kromah* regarding forensic interviewers testifying as experts in child sexual abuse cases are inapplicable to the instant case because the danger of prejudice—which could result from the jury giving undue weight to the expert testimony of a forensic interviewer who interviews the victim and expresses an opinion as to the child's credibility—is simply not present here. *See Kromah*, 401 S.C. at 357 n. 5, 358, 737 S.E.2d at 499 & n. 5.

Accordingly, we hold the circuit court properly admitted Galloway–Williams' testimony because her testimony did not improperly corroborate the minor victims' testimony, was not cumulative, and its probative value substantially outweighed any prejudice Appellant experienced from its submission to the jury.

**CONCLUSION**

Based on the foregoing, we hold the circuit court properly admitted Galloway–Williams' expert testimony regarding general behavioral characteristics of child sex abuse victims and delayed disclosures because the subject matter fell outside the realm of lay testimony. Moreover, we hold Galloway–Williams' expert testimony did not improperly bolster the minor victims' testimony because (1) she never met with the minor victims, (2) her knowledge of this case was limited to her discussions with the solicitor, (3) she did not comment on the credibility of the minor victims in the instant case, and (4) she did not express an opinion or belief regarding the credibility of child sex abuse victims' allegations more generally. We further find her testimony did not improperly corroborate—and, therefore, was not cumulative to—the minor victims' testimony. Finally, we hold the high probative value of Galloway–Williams' testimony outweighed any prejudicial effect on Appellant's case. Accordingly, the circuit court's decision is

**AFFIRMED.**

GEATHERS and McDONALD, JJ., concur.