**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Respondent,

v.

Rodsheen Ayer, Appellant.

Appellate Case No. 2015-002416

Appeal From Orangeburg County
Maite Murphy, Circuit Court Judge

Unpublished Opinion No. 2018-UP-105
Heard February 5, 2018 – Filed March 7, 2018

**AFFIRMED**

Appellate Defenders Victor R. Seeger and Susan Barber
Hackett, both of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant
Attorney General William Frederick Schumacher, IV,
both of Columbia; and Solicitor David Michael Pascoe,
Jr., of Orangeburg, all for Respondent.

**PER CURIAM:** Rodsheen Ayer appeals his conviction for attempted murder and
sentence of thirty years' imprisonment. On appeal, Ayer argues the trial court erred
in (1) admitting a photograph of him in a hospital room that violated his

expectation of privacy under the Fourth Amendment to the United States Constitution and right to privacy under the South Carolina Constitution and (2) allowing officers to testify about statements from individuals they interviewed during the course of the investigation. We affirm.

## HOSPITAL PHOTOGRAPH

Ayer argues the trial court erred in admitting the photograph of him in his hospital room because officers violated his Fourth Amendment rights by "entering his room without a warrant and taking [the] photograph of him." Ayer also contends the admission of the photograph violated his right to privacy under the South Carolina Constitution and urges the court to hold "individuals have a right to be free from government intrusions in a hospital room." We disagree.

We decline to address Ayer's argument that the officer's search of his hospital room violated his rights because we hold any alleged error would have been harmless. Generally, appellate courts will not set aside convictions due to insubstantial error not affecting the result. *State v. Sherard*, 303 S.C. 172, 176, 399 S.E.2d 595, 597 (1991). The officer was only in Ayer's hospital room because he was responding to a call from a hospital employee about a patient with a gunshot wound. *See* S.C. Code Ann. § 16-3-1072 (2015) (requiring medical personnel to report gunshot wounds to the local sheriff's department within a reasonable time after a request for treatment). When the officer entered Ayer's hospital room, Ayer voluntarily spoke with the officer and reported he was the victim of a crime. Ayer was cooperative and did not ask the officer to leave or refuse to speak with him. Ayer told the officer someone robbed him outside of a nightclub and shot him in the arm when he tried to escape. The officer took the photograph as part of his investigation of the crime Ayer reported. We see no reason why the photograph prejudiced Ayer. In fact, Ayer's counsel struggled at trial to articulate what prejudice the photograph caused Ayer, stating "it's a question of whether they can take his picture when he's clothed or not" and "the fact that they would not have been able to photograph him in that condition whatsoever." [1] We find no reason a shirtless photograph would, in itself, prejudice Ayer in this criminal trial. *See State v. Black*, 400 S.C. 10, 16–17, 732 S.E.2d 880, 884 (2012) ("To warrant reversal

---

[1] At oral argument, Ayer asserted the photograph was prejudicial because tattoos are visible on his chest. However, this argument was never made to the trial court and is unpreserved. *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693 (2003) ("In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial [court].").

[for the admission of evidence], an error must result in prejudice to the appealing party."). The State admitted similar photographs without objection from Ayer—including the photographs of Ayer sleeping on Minick's couch with his arm in a cast and the photographs of Ayer after he was arrested. Therefore, we find any error in the admission of the photograph harmless. *See State v. Herring*, 387 S.C. 201, 215, 692 S.E.2d 490, 497 (2009) (finding any error in an illegal search was harmless).

**HEARSAY**

Ayer argues the trial court erred in admitting testimony by Sergeant John Stokes and Corporal Leonarde Cain regarding what they learned from individuals during their investigation because it was inadmissible hearsay. Ayer contends the officers' testimony went beyond what was necessary to explain their actions in the investigation by informing the jury "what the investigation revealed, to whom the officers spoke, the content of those discussions, and how those discussions compared with other evidence in the case."

We agree that Sergeant Stokes's and Corporal Cain's testimony was hearsay; however, we hold the trial court's error is not reversible because Ayer was not prejudiced by the testimony. "The admission or exclusion of evidence is a matter addressed to the sound discretion of the trial court and its ruling will not be disturbed in the absence of a manifest abuse of discretion accompanied by probable prejudice." *State v. Douglas*, 369 S.C. 424, 429, 632 S.E.2d 845, 847–48 (2006). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *Id.* at 429–30, 632 S.E.2d at 848. "To show prejudice, the appellant must prove 'that there is a reasonable probability the jury's verdict was influenced by the challenged evidence or the lack thereof.'" *State v. Brown*, 411 S.C. 332, 339, 768 S.E.2d 246, 249 (Ct. App. 2015) (quoting *Fields v. Reg'l Med. Ctr. Orangeburg*, 363 S.C. 19, 26, 609 S.E.2d 506, 509 (2005)).

"'Hearsay' is a statement . . . offered in evidence to prove the truth of the matter asserted" and is not admissible at trial unless an exception or exclusion applies. Rules 801(c) & 802, SCRE. "[A]n out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken." *State v. Brown*, 317 S.C. 55, 63, 451 S.E.2d 888, 894 (1994). However, in *State v. King*, our supreme court "caution[ed] against the use and admission of 'investigative information'" because "it appear[ed prosecutors were using it as] an attempt to circumvent the rules against hearsay." Op. No. 27744

(S.C. Sup. Ct. filed Oct. 25, 2017) (Shearouse Adv. Sh. No. 40 at 38–39). The court clarified the question of whether investigative information is admissible "involves a straightforward hearsay analysis." *Id.* at 37. "While [the testimony] may be couched in terms of explaining an officer's conduct during an investigation, it may not be used to offer the substance of an out-of-court statement that would otherwise violate our state's rules against hearsay." *Id.* at 39.

At trial, the officers repeatedly testified to specific statements made by witnesses. Sergeant Stokes indicated Clark told him one of the suspects (1) was named Terrance with the last name of either Johnson or Bowman; (2) went to school at Denmark Technical College; and (3) was from the Bowman area. Sergeant Stokes also testified Clark told him the car the three suspects drove on the night of the incident was a white Chevrolet Impala or Malibu. Instead of testifying that he developed Johnson as a suspect after interviewing Clark, Sergeant Stokes recounted his conversations with Clark. Similarly, Corporal Cain testified to the following specific statements by Tenaja Minick: (1) Johnson and Morrison were friends; (2) a man named "Rah" from New York was staying with her and Morrison; and (3) Morrison was driving her white Chevrolet Impala on the night of the incident. Corporal Cain indicated someone with the Lexington County Sheriff's Department told him an individual received treatment at a hospital in Lexington for a gunshot wound. Corporal Cain also testified about his conversations with one of Johnson's family members who informed him she took Johnson to Mississippi. We believe these specific statements were only relevant to prove Johnson and Ayer committed the crime in question, and they used Minick's car to do it. These statements do not describe the investigative process or explain the actions the officers took as a result of the interviews. There was no other purpose for this testimony other than to prove the truth of the matter asserted and, therefore, we find the testimony was hearsay.

However, we find Ayer was not prejudiced by the officers' testimony because their testimony was cumulative to the other testimony at trial. *See State v. Townsend*, 321 S.C. 55, 59, 467 S.E.2d 138, 141 (Ct. App. 1996) (explaining when "hearsay is merely cumulative to other evidence, its admission is harmless"). Clark, Minick, and Johnson's family member all testified at trial. In his trial testimony, Clark identified Johnson as one of the men and indicated he also identified Johnson as a suspect in a photograph lineup the police showed him. Minick's trial testimony almost exactly matched her statements to Corporal Cain. She testified she knew Johnson through Morrison. She also indicated she knew Ayer as "Rah" and that he was visiting from New York and staying with her at that time. Minick recalled that Morrison borrowed her white Chevrolet Impala on the night of the incident and

returned it to her with blood in the backseat. Similarly, Johnson's family member indicated she took him to Mississippi after the incident. Furthermore, an emergency room nurse testified Ayer arrived at the hospital with a gunshot wound and gave the name "Emanuel Ayer." Sergeant David Day also testified about speaking with Ayer at the hospital. Therefore, we hold the trial court abused its discretion in admitting the officers' testimony but that error is not reversible because the testimony was not prejudicial.

**CONCLUSION**

Accordingly, Ayer's conviction for attempted murder is

**AFFIRMED.**

**SHORT, THOMAS, and HILL, JJ., concur.**