**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Nakia Karreim Johnson, Appellant.

Appellate Case No. 2015-001436

---

Appeal From Kershaw County
Doyet A. Early, III, Circuit Court Judge

---

Unpublished Opinion No. 2018-UP-109
Heard December 5, 2017 – Filed March 14, 2018

---

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

---

E. Charles Grose, Jr., of Grose Law Firm, of Greenwood, for Appellant.

Attorney General Alan McCrory Wilson, Assistant Attorney General William M. Blitch, Jr., and Solicitor Daniel Edward Johnson, all of Columbia, for Respondent.

---

**PER CURIAM:** Nakia Johnson appeals his convictions of second-degree

criminal sexual conduct (CSC) with a minor and lewd act on a minor (lewd act). On appeal, Johnson argues the trial court erred in refusing to grant a mistrial because (1) the State's expert witness in child abuse assessment testified family members generally question how they failed to recognize that abuse was occurring and (2) the child advocacy interviewer testified he instructed Victim to tell the truth during the forensic interview. We affirm in part, reverse in part, and remand for a new trial.

## STANDARD OF REVIEW

"The admission or exclusion of evidence is a matter addressed to the sound discretion of the trial court and its ruling will not be disturbed in the absence of a manifest abuse of discretion accompanied by probable prejudice." *State v. Douglas*, 369 S.C. 424, 429, 632 S.E.2d 845, 847–48 (2006). "The decision to grant or deny a mistrial is within the sound discretion of the trial judge." *State v. Stanley*, 365 S.C. 24, 33, 615 S.E.2d 455, 460 (Ct. App. 2005). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *Douglas*, 369 S.C. at 429–30, 632 S.E.2d at 848. "To show prejudice, the appellant must prove 'that there is a reasonable probability the jury's verdict was influenced by the challenged evidence or the lack thereof.'" *State v. Brown*, 411 S.C. 332, 339, 768 S.E.2d 246, 249 (Ct. App. 2015) (quoting *Fields v. Reg'l Med. Ctr. Orangeburg*, 363 S.C. 19, 26, 609 S.E.2d 506, 509 (2005)). "The granting of a motion for a mistrial is an extreme measure which should be taken only where an incident is so grievous that prejudicial effect can be removed in no other way." *Stanley*, 365 S.C. at 34, 615 S.E.2d at 460.

## EXPERT'S TESTIMONY

Johnson argues the trial court erred in refusing to grant a mistrial after the State's expert witness in child abuse assessment testified family members in abuse cases generally question how they failed to recognize that abuse was occurring. Johnson asserts this testimony improperly bolstered the Mother's and Aunts' testimony because they testified they were not aware of the recurring abuse of Victim. Johnson asserts an expert testifying about the behavioral characteristics of family

members of abuse victims exceeds the scope of *Brown*[1] and *Anderson*.[2]  We disagree.

"[E]ven though experts are permitted to give an opinion, they may not offer an opinion regarding the credibility of others."  *State v. Kromah*, 401 S.C. 340, 358, 737 S.E.2d 490, 499 (2013).  "The assessment of witness credibility is within the exclusive province of the jury."  *State v. McKerley*, 397 S.C. 461, 464, 725 S.E.2d 139, 141 (Ct. App. 2012).  "Consequently, 'it is improper for a witness to testify as to his or her opinion about the credibility of a child victim in a sexual abuse matter.'"  *Brown*, 411 S.C. at 343, 768 S.E.2d at 252 (quoting *Kromah*, 401 S.C. at 358–59, 737 S.E.2d at 500).  A child abuse assessment expert can "testify to the behavioral characteristics of sex abuse victims."  *Anderson*, 413 S.C. at 218, 776 S.E.2d at 79.

> The better practice, however, is not to have the individual who examined the alleged victim testify, but rather to call an independent expert.  To allow the person who examined the child to testify to the characteristics of victims runs the risk that the expert will vouch for the alleged victim's credibility.

*Id.* at 218–19, 776 S.E.2d at 79.

The trial court qualified Dr. Allison Foster, chief psychologist at the Assessment & Resource Center (ARC), as an expert in child abuse assessments.  When asked if family members always know what was happening to a child, Dr. Foster answered,

---

[1] *Brown*, 411 S.C. at 341–42, 768 S.E.2d at 251 (holding an expert's "specialized knowledge of the behavioral characteristics of child sex abuse victims was relevant and crucial in assisting the jury's understanding of why children might delay disclosing sexual abuse, as well as why their recollections may become clearer each time they discuss the instances of abuse").
[2] *State v. Anderson*, 413 S.C. 212, 220–21, 776 S.E.2d 76, 80 (2015) ("The sole purpose of [a forensic interviewer's] jury testimony is to lay the foundation for the introduction of the videotape, and the questioning must be limited to that subject. There is to be no testimony to such things as techniques, of the instruction to the interview subject of the importance of telling the truth, or that the purpose of the interview is to allow law enforcement to determine whether a criminal investigation is warranted.").

No, they do not. And one of the most painful dynamics in child sexual abuse cases involving family members is that mothers -- and I'll say mothers because most often it is the mother who is saying, how could I not have seen something was going on? So every week -- and at my job at the ARC, that's a question that --

Johnson objected, and the trial court held a bench conference. The trial court instructed the jury to "[d]isregard that last statement and answer." After the jury was excused from the room, the trial court allowed Johnson to place his objection on the record. Johnson moved for a mistrial, arguing Dr. Foster's testimony bolstered the credibility of Mother's testimony and was prejudicial because there was no physical evidence. The trial court denied the motion for a mistrial, finding Dr. Foster's testimony was not a comment on Mother's credibility and the court's instructions to the jury to ignore the comment were sufficient.

We hold the trial court did not err in denying Johnson's motion for a mistrial because Dr. Foster's testimony did not bolster Mother's testimony.[3] The State properly followed the procedure in *Anderson* by calling an expert who had no prior involvement with the case. Dr. Foster never interviewed Victim or Mother, and she did not have any prior knowledge of the case. Dr. Foster never commented—directly or indirectly—about the credibility of Victim's allegations. Although Dr. Foster's testimony that family members did not always know when a minor was being sexually abused mirrored Mother's testimony that she did not know Johnson was abusing Victim, this testimony did not rise to the level of bolstering Mother's testimony. *See Brown*, 411 S.C. at 345, 768 S.E.2d at 253 ("The fact that [an expert's] testimony corroborated some of the minor victims' reasons for delaying disclosure of the abuse does not mean her testimony improperly bolstered their accounts."). Moreover, the trial court struck Dr. Foster's statement about family members not always being aware of abuse. Thus, had there been error, such was cured by striking the testimony, and it did not rise to the level of being so prejudicial as to require a mistrial. *See Stanley*, 365 S.C. at 34, 615 S.E.2d at 460

---

[3] We find Johnson's bolstering argument as to the Aunts' testimony unpreserved. *See State v. Adams*, 354 S.C. 361, 380, 580 S.E.2d 785, 795 (Ct. App. 2003) (stating a defendant may not argue one ground below and another on appeal). On appeal, Johnson argues Dr. Foster's testimony bolstered "other family members[']" testimony. However, at trial, Johnson argued Dr. Foster's testimony bolstered "the credibility . . . of what was said by the mom and the daughter."

("The granting of a motion for a mistrial is an extreme measure which should be taken only where an incident is so grievous that prejudicial effect can be removed in no other way.").  Therefore, we find the trial court did not abuse its discretion in refusing to grant a mistrial.  *See id.* at 33, 615 S.E.2d at 460 ("The decision to grant or deny a mistrial is within the sound discretion of the trial judge.").

## FORENSIC INTERVIEWER'S TESTIMONY

Johnson argues the trial court erred in denying his motion for a mistrial when the forensic interviewer testified his procedure for an interview includes asking interviewees if they will tell the truth.  Johnson contends this goes directly against the supreme court's holding in *Anderson*.  Johnson asserts the testimony was prejudicial because the case turned on the credibility of Victim because there was no physical evidence in the case.  The State admits the comment by the forensic interviewer was "arguably improper" according to *Kromah* and *Anderson*, but it "was minimal and did not warrant a mistrial."

In *Kromah*, our supreme court held forensic interviewers should avoid testifying that they instructed the child to be truthful.  401 S.C. at 360, 737 S.E.2d at 500.  In *Anderson*, the supreme court clarified "[t]here is to be no testimony [by a forensic interviewer] . . . of the instruction to the interview subject of the importance of telling the truth . . . ."  413 S.C. at 221, 776 S.E.2d at 80.  "This type of testimony, which establishes the 'particularized guarantees of trustworthiness,' necessarily conveys to the jury that the interviewer and law enforcement believe the victim and that their beliefs led to the defendant's arrest, these charges, and this trial, thus impermissibly bolstering the minor's credibility."  *Id.*

At trial, David Kellin, the forensic interviewer, described how he began the interview with Victim:

> I begin by introducing myself, and very briefly in the beginning, we talk about just general topics.  We check and see if they're aware that this is being recorded. . . . [W]e encourage them to -- if they don't know something, to say they don't know; if they don't understand, to say I don't understand and not to guess.  We also ask in the beginning if they will . . . tell the truth during the interview process.

We agree with Johnson that the forensic interviewer's testimony was improper under *Kromah* and *Anderson*.  In *Anderson*, our supreme court explicitly stated

forensic interviewers are not to testify about instructing victims to tell the truth during forensic interviews because that testimony "necessarily" vouches for the victim's credibility. *See id.* In the instant case, Kellin testified he begins forensic interviews by asking victims if they would tell the truth during the interview process. The trial court refused to strike this testimony or grant a mistrial. It is difficult to tell from the record presented whether the jury heard Kellin ask this question or Victim answer the question when the forensic interview was played at trial. The State argues Kellin's one comment did not rise to the level of being so prejudicial as to require a mistrial. Although it is true the prejudice in *Anderson* was "overwhelming" and Kellin's testimony only mentioned truth-telling once, we feel constrained by the language in *Kromah* and *Anderson* to find any mention of the word "truth" during a forensic interview or during a forensic interviewer's testimony to be improper. *See Anderson*, 413 S.C. at 220, 776 S.E.2d at 80 ("The prejudice on this record is overwhelming.").

Although we find the trial court erred in allowing Kellin to testify that he asked Victim if she would tell the truth in the forensic interview, we believe this error only requires reversal of Johnson's conviction for second-degree CSC with a minor because only that conviction depended solely on the credibility of Victim. *See State v. Chavis*, 412 S.C. 101, 110, 771 S.E.2d 336, 341 (2015) ("The determination whether a bolstering error is harmless depends on whether the case turns on the credibility of the victim."). We affirm Johnson's lewd act conviction because Mother's testimony about overhearing Johnson and Victim's conversation corroborated Victim's testimony regarding the graveyard incident. Victim testified Johnson told her to get into the car to go to the store, and he left before Mother and the other children could come. Victim indicated Mother called to ask Johnson why he left her and the other children. Victim recalled Johnson took her to a graveyard instead of the store and told her to pull down her pants. Victim indicated Johnson pulled down his pants and started touching her, but the incident stopped because Mother was "still on the line." Victim testified they "hurried up and went to the store," and he took her home.[4]

Similarly, Mother testified Johnson took Victim to the store but left her and the other children at home. She indicated she called Johnson to ask why he left without them and to tell him to get items from the store. Mother recalled she later got an incoming call from Johnson, but he did not say anything when she answered

---

[4] The State entered a surveillance video into evidence showing Johnson and Victim at the store that day.

the phone.  Mother then heard the following conversation between Johnson and Victim:

> I heard him say, you know I want to nut in you, but I
> can't. . . . Then I heard him say, you know why?  And she
> didn't say anything.  He said, do you know why?  And
> she said, because I'll get pregnant.  And he asked her did
> she miss him.  She didn't say anything.  And he asked her
> how does she want to do it; does she want to get on top
> or does she want him to get on top.  And I think she said,
> you on top.

We find Mother's testimony about the telephone call corroborated Victim's testimony about the graveyard incident, and the graveyard incident was enough evidence for the jury to convict Johnson of lewd act.  *See State v. Norton*, 286 S.C. 95, 97, 332 S.E.2d 531, 532–33 (1985) (explaining, under the crime of lewd act, it is unlawful "for any person" over fourteen to "wil[l]fully and lewdly commit or attempt [to commit] any lewd or lascivious act upon or with the body . . . of a child under" fourteen "with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child" (quoting S.C. Code Ann. § 16-15-140 (1976)[5])).  Mother's testimony, however, does not corroborate Victim's testimony about any of the other incidents.  The graveyard incident itself is not enough to support Johnson's conviction for second-degree CSC with a minor because there was no evidence of penetration.  *See* S.C. Code Ann. § 16-3-655(B) (2015) (defining second-degree CSC with a minor as "engag[ing] in a sexual battery with a victim" who is between eleven and fourteen years old); S.C. Code Ann. § 16-3-651 (2015) (defining "sexual battery" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body").  Therefore, we affirm Johnson's conviction for lewd act with a minor and reverse and remand for a new trial on second-degree CSC with a minor.

**CUMULATIVE ERROR**

Johnson argues he is entitled to a new trial pursuant to the cumulative error doctrine based on (1) the improper bolstering of the family members' testimony by

---

[5] Lewd act is now third-degree CSC with a minor.  *See* S.C. Code Ann. § 16-3-655(C) (2015).

the State's expert witness and (2) the improper bolstering of the Victim's testimony by the forensic interviewer. We disagree.

"The cumulative error doctrine provides relief to a party when a combination of errors, insignificant by themselves, has the effect of preventing the party from receiving a fair trial, and the cumulative effect of the errors affects the outcome of the trial." *State v. Beekman*, 405 S.C. 225, 237, 746 S.E.2d 483, 490 (Ct. App. 2013). "An appellant must demonstrate more than error in order to qualify for reversal pursuant to the cumulative error doctrine; rather, he must show the errors adversely affected his right to a fair trial to qualify for reversal on this ground." *Id.*

We find no merit to this argument because we hold the trial court did not err in regards to Dr. Foster's testimony.

**CONCLUSION**

For the foregoing reasons, we affirm Johnson's conviction for lewd act with a minor. We reverse his conviction for second-degree CSC with a minor and remand for a new trial.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**WILLIAMS, THOMAS, and MCDONALD, JJ., concur.**